584 A.2d 895

**COMMONWEALTH of Pennsylvania, Respondent,**

v.

**Roberto SIMON, Petitioner.**

Supreme Court of Pennsylvania.

Argued May 2, 1989.

Reargued May 7, 1990.

Decided Dec. 27, 1990.

Charles D. Vance, Jr., Mechanicsburg, for petitioner.

Andrew B. Kramer and Brian P. Gottlieb, Dep. Attys. Gen., for respondent.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Court of Common Pleas of Dauphin County, terminating Petitioner Simon's

confinement for civil contempt, lifting the suspension of a previously imposed sentence for drug related crimes during pendency of the contempt sentence, and dismissing Simon's petition for a writ of habeas corpus relative to his criminal contempt sentence.

Simon was sentenced for drug-related crimes on December 10, 1983, and immediately began to serve a term of imprisonment of three to fifteen years. On December 4, 1984, the Attorney General of Pennsylvania applied to President Judge Thomas G. Gates, Supervising Judge of the Third Statewide Investigating Grand Jury, for an order of immunity for Simon, pursuant to 42 Pa.C.S. § 5947, which concerns the immunity of witnesses before courts, grand juries, investigating grand juries, and the minor judiciary or coroners.[1] The trial court granted the application and subsequently granted Simon's request for appointed counsel and the services of an interpreter.

1. 42 Pa.C.S. § 5947, in pertinent part, provides:
   (b) **Request and issuance.** The Attorney General or a district attorney may request an immunity order from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the Attorney General or district attorney:
   (1) the testimony or other information from a witness may be necessary to the public interest; and
   (2) a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.
   (c) **Order to testify.** Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding specified in subsection (a) [including proceedings before investigating grand juries], and the person presiding at such proceeding communicates to the witness an immunity order, that witness may not refuse to testify based on his privilege against self-incrimination.
   \*   \*   \*   \*   \*   \*
   (e) **Civil contempt.** Any person who shall fail to comply with an immunity order may be adjudged in civil contempt and committed to the county jail until such time as he purges himself of contempt by complying with the order, except that with regard to proceedings before grand juries or investigating grand juries, *if the grand jury before which a person has been ordered to testify has been dissolved, he may then purge himself of contempt by complying before the designated court which issued the order.*
   (Emphasis added.)

Simon was summoned before the investigating grand jury on December 7, 1984, but was excused because his answers were unresponsive. He was advised, however, that his subpoena would remain in effect and that he would probably be called to appear before the grand jury when it reconvened in January, 1985. Simon's subpoena continued in effect, and on May 14, 1985, he was again summoned to the grand jury, but he declined to testify or to answer questions put to him by the court. The following exchange was the basis for the contempt citations:

COMMONWEALTH ATTORNEY. Mr. Simon had previously appeared before the grand jury during the December 1984 session. At that time he was sworn by your Honor and the Attorney General through Mr. Kramer, Deputy Attorney General, applied for and was given an order of immunity for Mr. Simon.

If I might stop just for a moment. I would also like to indicate that also present is an official interpreter for Mr. Simon's purpose. Did you want to inquire of Mr. Simon as to whether or not he needs the services of her? [Milly Serrano sworn as interpreter.]

\* \* \* \* \* \*

THE COURT. Mr. Simon, have you understood what Mr. Graci has said so far?

MR. SIMON. I stand mute in this honorable court proceeding because if I speak I will be denied due process of law.

THE COURT. Who prepared that for him?

MR. SIMON. I stand mute in this honorable court proceeding because if I speak I will be denied due process of law.

THE COURT. Mr. Simon, I must advise you that as a witness before the grand jury you have a duty as do all citizens to testify and give true, honest, complete and accurate answers to all questions whether asked by the Court or by the Attorney appearing before the grand jury.

You have been granted immunity from prosecution. Therefore, you have no constitutional right not to answer any question and it's the duty of the court to determine whether or not your answers are willful or contemptuous. If they are contemptuous and without proper legal ground I have no choice but to hold you in contempt and imprison you until you do give full, truthful, complete, honest and accurate answers to all questions put, whether put by me or by the Attorney General before the grand jury.

If you are in contempt and refuse to obey this direction I will imprison you until you do comply with the Court's direction and the time you spend in jail until you purge yourself of contempt will not count against the sentence you are presently serving.

In other words, that sentence will stop and will not start running until you do answer the questions I put to you or until you do answer fully and truthfully, completely and honestly to the grand jury.

Do you understand what I have said?

MR. SIMON. I stand mute in this honorable court proceeding because if I speak I will be denied due process of law.

\* \* \* \* \* \*

THE COURT. Mr. Simon, if I ask you any questions do I understand you correctly that you will not answer them in any way other than that prepared statement that you have read, is that correct?

MR. SIMON. I stand mute in this honorable court proceeding because if I speak I will be denied due process of law.

THE COURT. I find him to be in criminal contempt. I sentence him to serve a term of imprisonment in the Dauphin County Jail up to six months, upon the completion or expiration of any sentence presently imposed. Mr. Simon, if I directed you to appear before the grand jury and you are asked any questions by the Deputy Attorney General in the presence of the grand jury, is it

your intention to answer all questions in the manner you have just indicated by reciting that prepared statement?

MR. SIMON. I stand mute in this honorable court proceeding because if I speak I will be denied due process of law.

THE COURT. I don't believe it is necessary for the Court to entertain this charade of having him go before the grand jury and do what he said he's going to do now and I find that he is in civil contempt of the court ...

N.T. May 14, 1985, pp. 2–6.

The trial court ordered that Simon be imprisoned until he purged himself of civil contempt "by appearing and testifying before the Statewide Investigating Grand Jury as heretofore instructed," and that his pre-existing drug-related sentence be suspended for the duration of the civil contempt. The trial court also ordered that Simon serve a criminal contempt sentence of six months, the sentence to commence at the expiration of his original, drug-related sentence.

On March 13, 1986, the Third Statewide Investigating Grand Jury went out of existence. Simon was still imprisoned for civil contempt and on August 5, 1986, he filed a pro se writ of habeas corpus. On January 22, 1987, the trial court issued an opinion and order terminating Simon's confinement for civil contempt effective March 13, 1986, the date the Statewide Grand Jury went out of existence, lifting the suspension of Simon's original prison sentence, and dismissing Simon's petition with respect to the criminal contempt sentence. In an opinion supporting the January 22 order, the trial court held 42 Pa.C.S. § 5947(e) unconstitutional on the grounds that it permitted the imprisonment of a civil contemnor beyond the existence of the investigating grand jury. On February 4, 1987, the Commonwealth filed a motion for reconsideration, in which the Commonwealth did not contest the relief given Simon, but requested that the court reconsider the legal grounds for its decision. On February 20, the trial court denied the Commonwealth's motion for reconsideration, and on the same date, Simon

appealed the trial court's order, which had partially denied his habeas corpus petition, alleging that the lower court had failed to consider a number of claims made in the habeas corpus petition. On February 24, 1987, Superior Court remanded the case for inclusion of a transcript and for a more complete discussion by the trial court of the issues raised by Simon.

On March 24, 1987, both parties filed an application for stay of the remand, pending consideration of the joint application for stay. Attached to the application for stay were copies of the notes of testimony identified by Superior Court as necessary for its determination of the issues on appeal. Superior Court initially stayed its remand order, but inasmuch as 42 Pa.C.S. § 722(7) provides that this Court shall have exclusive jurisdiction of appeals from the final orders of courts of common pleas where a court of common pleas has held a statute unconstitutional,[2] we accepted jurisdiction.

The Commonwealth raises two preliminary matters. First, it argues that it is inappropriate for this Court to assume jurisdiction in this case because the trial court unnecessarily reached a constitutional issue. Secondly, it argues that Simon obtained the relief to which he was entitled, i.e., the termination of the contempt sentence when the investigating grand jury went out of existence, and therefore, the case is moot.

■ With respect to the first preliminary issue, the trial court indicated in its opinion of February 20, 1987 that Simon's habeas corpus petition asserted that his civil confinement beyond March 13, 1986 had become punitive, rath-

---

**2.** 42 Pa.C.S. § 722(7) provides:

The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:

\*     \*     \*     \*     \*     \*

(7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any ... statute of this Commonwealth....

er than coercive, and that the use of a civil contempt sanction for a punitive purpose rather than to coerce testimony was a violation of his due process rights. It was not inappropriate, therefore, for the court to address the constitutionality of the statute, for Simon raised it.

With respect to the second preliminary issue, although Simon has satisfied both the civil and criminal contempt sentences, which, arguably moots the issues in this case, we will treat Simon's arguments on their merits inasmuch as they come to us on direct appeal from a lower court's declaration that a statute of the Commonwealth is unconstitutional.

We first address the question of the constitutionality of Section 5947(e). That section, as we have previously seen, provides in pertinent part:

> Any person who shall fail to comply with an immunity order may be adjudged in civil contempt and committed to the county jail until such time as he purges himself of contempt by complying with the order, except that with regard to proceedings before ... investigating grand juries, *if the grand jury before which a person has been ordered to testify has been dissolved, he may then purge himself of contempt by complying before the designated court which issued the order.*

42 Pa.C.S. § 5947(e). (Emphasis added.) The trial court believed this section to be unconstitutional for the following reasons:

> To allow the Legislature to require a contemnor to remain in confinement beyond the Grand Jury's term until he purged himself would violate the contemnor's due process rights. Once the Grand Jury has ceased to function, the contemnor can never comply with the Court's order. Requiring him to remain imprisoned until he purged himself before the judge would in effect subject him to a penalty with no remedy.

\*　　\*　　\*　　\*　　\*　　\*

We realize that Section 5947(e) provides that a contemnor may purge himself before the Supervising Judge after the dissolution of the Grand Jury. We consider this a useless exercise for the Supervising Judge does not have the power to [sic] the Grand Jury itself. Such a requirement contributes nothing to the procurement of a witness' testimony to aid the Grand Jury and does not justify the continued confinement of one imprisoned on a civil contempt charge.

Slip. Op. of January 22, 1987, Court of Common Pleas of Dauphin County, pp. 11–12.

We disagree with the court of common pleas that the statute is unconstitutional. First, it is inaccurate to say that the civil contemnor can never purge himself of contempt after the investigating grand jury has gone out of existence. By the plain terms of the statute, he may purge himself by testifying before the court. This Court has held that "the only limitations on civil contempt sentences are that they must be conditional and may not exceed the period in which the contemnor is able to comply," and a civil contemnor may not be sentenced "conditioned on the performance of some act that is incapable of performance." *In Re Martorano*, 464 Pa. 66, 84, 80, 346 A.2d 22, 31, 29 (1975). That requirement has been met by the statutory provision that the civil contemnor may testify before the supervising judge, even after the investigating grand jury has gone out of existence, to purge himself of contempt. We also disagree with the trial court's observation that confinement beyond the term of the grand jury does nothing to aid the grand jury in procuring the witness's testimony, for if the contemnor purges himself of contempt before the supervising judge, the court may make a record which may be used in the event the Commonwealth elects to convene another investigating grand jury based upon the contemnor's new testimony. For these reasons, we conclude that the statute is constitutional.

Finally, Simon contends that the suspension of the running of his prior sentence was beyond the jurisdiction of

the lower court and that his Fifth Amendment right to be free from double jeopardy was violated when his underlying sentence was interrupted and then reimposed. Both of these claims are without merit.

At the root of Simon's argument that the interruption of his underlying sentence during the pendency of the contempt sentence, and the reimposition of that sentence upon expiration of the contempt sentence constitutes double jeopardy is the assertion that the interruption and reimposition of the underlying sentence constitutes multiple punishment for the original drug offense. Simon was not sentenced more than once for the underlying felony. His sentence was three to fifteen years before he was found in civil contempt; it remained three to fifteen years during the pendency of the civil contempt sentence, which temporarily interrupted the original sentence; and when the civil contempt sentence ended, his original sentence remained three to fifteen years. It was never increased. It never changed. Rather, Simon himself caused the trial court to interrupt this sentence through his contemptuous behavior. As we have said, the trial court was well within its lawful powers in interrupting Simon's sentence, and Simon will not be heard now to argue that his own contumacy somehow bootstrapped him into the position of a constitutional victim.

As to the argument that the trial court had no jurisdiction to suspend the previously imposed Pennsylvania sentence, it is apparent that the court had the power to imprison Simon pursuant to 42 Pa.C.S. § 5947(e). It is also apparent that if the court were not able to suspend Simon's previously imposed sentence while Simon was serving a sentence for civil contempt, the court would be powerless to give effect to its civil contempt citation, for Simon was already in prison and would be able to use his drug-related sentence to insulate himself from the coercive impact of a civil contempt sentence. But this Court has previously held that courts have the *inherent* power to enforce their orders by finding a contemnor in civil contempt of court, *Commonwealth v. Martorano,* 464 Pa. 66, 77, 346 A.2d 22, 27 (1975),

and 42 Pa.C.S. § 5947(e) confers express statutory power to adjudge a contemnor in civil contempt. Since the interruption of Simon's drug-related sentence does not constitute double jeopardy, and since the court was authorized by statute and caselaw to enforce its orders of civil contempt, it was fully empowered to suspend Simon's previously imposed sentence for the purpose of giving effect to its contempt adjudication.

Order of the Court of Common Pleas of Dauphin County is affirmed.[3]

ZAPPALA, J., files a dissenting opinion which is joined by LARSEN and CAPPY, JJ.

ZAPPALA, Justice, dissenting.

Because I am of the belief that 42 Pa.C.S. § 5947(e) creates an unconstitutional intrusion upon a contemnor's due process rights, I dissent.

The functions of an investigatory grand jury are set by statute, rules promulgated by this Court, and case law. In essence, the purpose of the grand jury is to investigate and discover criminal acts which adversely affect and endanger the general public. *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936). To assist in the performance of the duties of the grand jury, the prosecuting attorney has been given the right to summon witnesses before the grand jury and if necessary to request immunity for their testimony. 42 Pa.C.S. § 5947(b). To enforce the immunity granted, the

**3.** Simon also argues that (1) the lower court improperly failed to consider his assertion that he was denied due process by not being allowed to challenge the original grant of immunity prior to his assertion of his Fifth Amendment privilege; (2) the lower court erred in failing to consider his claim of ineffective assistance of counsel; (3) he was denied due process by the trial court's failure to appoint a "certified" interpreter; (4) he was denied due process because he was not advised either by the court or his counsel of his right to appeal his contempt convictions; (5) the lower court erred in failing to consider the due process implications of alleged prosecutorial misconduct during the grand jury proceedings; (6) the trial court failed to consider the argument that Simon was improperly subjected to punitive rather than coercive use of civil contempt. We have considered all of these arguments and have determined that they are without merit.

supervising judge has been armed with the authority to coerce testimony through the finding of civil contempt and the imposition of incarceration. 42 Pa.C.S. § 5947(e).

The issue that must be addressed is the validity of the legislative scheme providing a contemnor, who has refused to testify during the term of the Grand Jury, the opportunity to purge himself of contempt by testifying before the Supervising Judge. 42 Pa.C.S. § 5947(e). For the following reasons this provision of the Act must be stricken as contrary to the purpose of the Act and as repugnant to our Constitution.

If the purpose and function of the grand jury is to ascertain whether criminal acts have occurred and to bring the individuals involved to justice through the use of an indictment, then no benefit exists in requiring an individual imprisoned for failure to testify before the grand jury notwithstanding immunity to testify before a supervising judge.[1] The judge as a neutral arbitrator cannot use the information received from the contemnor for the purpose of prosecuting any criminal violations. Thus, when § 5947(e) requires a contemnor to purge himself by "complying before the designated court which issued the order," the legislature is creating a situation in which a contemnor could never purge himself, because a judge cannot use the evidence for any legitimate purpose.

Due process of law requires that a person being incarcerated for refusing to testify before a grand jury after having been granted immunity be given an opportunity to purge himself or be released from incarceration. *In Re: Martora-*

---

1. In support of its position that § 5947(e) is constitutional, the majority holds that permitting a witness to testify before a supervising judge aids a grand jury investigation by creating a record of that testimony which can be used if the Commonwealth elects to convene another grand jury. (See Slip Opinion at p. 10). Under this analysis the court becomes merely an appendage or vehicle of the grand jury and the prosecuting attorney's office. I cannot accept this concept of relegating our judiciary to a conduit from whom the prosecuting attorney receives his requested information much as a house or senate committee reports to their respective bodies. The judiciary is not an arm of the prosecutor's office, but an independent branch of government with specific constitutional powers and duties.

*no,* 464 Pa. 66, 346 A.2d 22 (1975). *See also, Common-wealth v. Devlin,* 460 Pa. 508, 333 A.2d 888 (1975); *Cones-toga National Bank v. Patterson,* 442 Pa. 289, 275 A.2d 6 (1971) (regarding the minimum requirements of procedural due process). Under the applicable statute, the contemnor is given no such opportunity since the basis for his contempt will not be relieved by the remedy provided by the legislature. As such, § 5947(e) does not become coercive (i.e., an attempt to persuade the witness to provide evidence), but punitive.[2] This change in the nature of the punishment effectively denies the contemnor due process and thus violates our Constitution.

Furthermore, the procedure set forth in § 5947(e) infringes upon our constitutional concept of the judiciary. A trial judge's role in our system of justice is not that of investigator, but a trier of fact. He is not concerned with supposition or prima facie evidence, but whether sufficient evidence has been establish to prove guilt or innocence. In the course of a trial, this significant role difference requires hearing evidence of both parties rather than exclusively the evidence of the Commonwealth. Finally, a trial judge functions in the context of an adversary proceeding. Section 5947(e) ignores this function by not only requiring a judge to take jurisdiction in a matter in which no proceeding is pending, but also reduces the role of the Supervising Judge to an adjunct investigator for the prosecuting attorney. Neither the Supervising Judge nor the Grand Jury can use any information obtained from a contemnor's testimony. Rather the prosecuting attorney will be the only one to benefit from this testimony. Thus, the legislature is per-

**2.** In *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), the United States Supreme Court held that a civil contemnor who refused to testify before a grand jury after being granted immunity could only be incarcerated until the grand jury expired, since the coerciveness of the incarceration would end when the grand jury was no longer in session. "Where the grand jury has been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt." *Id.* at 371, 86 S.Ct. at 1536.

mitting the prosecuting attorney to use the Supervising Judge as a discovery tool.

Likewise, since no proceeding is pending, if a grand jury term has expired, a judge has no jurisdiction to consider any matter before him. Therefore, a judge has no authority to hear a contemnor's testimony, creating the inevitable obstacle of leaving a contemnor without any opportunity to purge himself of contempt.

Effectively, in promulgating § 5947(e), the legislature has denied a contemnor his due process rights which I cannot condone.

LARSEN and CAPPY, JJ., join in this dissenting opinion.