William D. DUNNE, Petitioner–
Appellant,

v.

Patrick W. KEOHANE, Warden,
Respondent–Appellee.

No. 93–2233.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 2, 1993.

Decided Jan. 18, 1994.

Rehearing and Suggestion for
Rehearing En Banc
Denied Feb. 25, 1994.

William D. Dunne, pro se.

Sue Hendricks Bailey, Asst. U.S. Atty., Indianapolis, IN, for Patrick W. Keohane.

Before POSNER, Chief Judge, and RIPPLE and ROVNER, Circuit Judges.

POSNER, Chief Judge.

William Dunne, a prisoner in the federal penitentiary at Terre Haute, Indiana, appeals from the denial of his petition for habeas corpus, raising interesting questions concerning punishment on the installment plan. He had committed a series of bank robberies as part of a conspiracy to free prisoners, including federal prisoners, held in a county jail in the State of Washington. His crimes violated both federal and state law. In 1980 he was sentenced in a federal district court in Washington to serve a total of 80 years in prison for conspiracy and bank robbery, and the sentencing judge recommended that the five years of this total that were applicable to the conspiracy charge be made concurrent with whatever sentence the State of Washington imposed on him with respect to state charges arising out of the same conduct. A week later a state court sentenced Dunne to

a prison term of 5 to 15 years on those charges. Dunne remained in state prison until June 18, 1982, when the U.S. Bureau of Prisons "accepted" him at a federal prison in Washington as a state prisoner boarded in a federal prison. The idea behind this manner of acceptance was that Dunne would serve his state sentence first (albeit in federal prison—but as a "boarder" there rather than a regular federal inmate, pursuant to 18 U.S.C. § 5003 and 28 C.F.R. § 0.95(g); see *Howe v. Smith*, 452 U.S. 473, 101 S.Ct. 2468, 69 L.Ed.2d 171 (1981)), and then his federal sentences. On July 14, 1982, deciding that Dunne's federal conspiracy sentence should, as the federal sentencing judge had recommended, be served concurrently with his state sentence, the Bureau of Prisons changed his classification, retroactively to his admission to the federal prison, from state boarder to federal prisoner, pursuant to 18 U.S.C. § 4085 (since repealed). *United States v. Ray*, 828 F.2d 399, 419 (7th Cir. 1987); *United States v. Aleman*, 609 F.2d 298, 309 (7th Cir.1979); *Cox v. United States*, 551 F.2d 1096, 1099 (7th Cir.1977). On June 24, 1985, when Dunne completed serving his federal conspiracy sentence, his status reverted to that of state boarder. It was not until March 18, 1991, when he completed serving his state sentence, that he began serving, as a federal prisoner, his remaining federal prison sentences—those that were to run consecutively to his state sentence, as distinct from the federal conspiracy sentence, which had run concurrently with that sentence.

Since June 18, 1982, therefore, Dunne has been successively a state prisoner boarded in a federal prison, a federal prisoner, a state prisoner boarded in a federal prison, and a federal prisoner again. Whether or not one takes at face value the retroactive change of classification from state boarder to federal prisoner (which would affect only the period between June 18, 1982 and July 14, 1982), it is evident that Dunne's federal prison term was interrupted by a state prison term. From a federal standpoint it is as if he had been released from federal prison in 1985 and readmitted to the prison in 1991, since while he remained in the same federal prison throughout these changes of status, between 1985 and 1991 he was there only as a boarder.

■ A provision of the Interstate Agreement on Detainers contains an "anti-shuttling" provision designed to limit interruptions in confinement, but it is applicable only to transfers based on charges that have not yet gone to judgment. 18 U.S.C.App. II, § 2, arts. I, IV(e). Dunne had already been sentenced in both the federal and the state courts when he was transferred from a state to a federal prison and classified as a state boarder. There is, however, a common law rule, which has been held applicable to federal sentencing, that unless interrupted by fault of the prisoner (an escape, for example) a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it. The government is not permitted to delay the expiration of the sentence either by postponing the commencement of the sentence or by releasing the prisoner for a time and then reimprisoning him. *United States v. Melody*, 863 F.2d 499, 504 (7th Cir.1988); *Cox v. United States*, *supra*, 551 F.2d at 1099; *Shields v. Beto*, 370 F.2d 1003, 1006 (5th Cir.1967); *White v. Pearlman*, 42 F.2d 788 (10th Cir.1930); *Ex parte Eley*, 9 Okl.Cr. 76, 130 Pac. 821 (App. 1913); *In re Strickler*, 51 Kan. 700, 33 Pac. 620 (1893). So, for example, if the sentence is five years and the defendant begins to serve it on July 1, 1990, the government cannot, by releasing him between January 1, 1992, and December 31, 1992, postpone the expiration of his sentence from June 30, 1995, to June 30, 1996—cannot in fact postpone it a day beyond June 30, 1995. The sentence expires on schedule even though the defendant will have served four years rather than five. The government is not permitted to play cat and mouse with the prisoner, delaying indefinitely the expiation of his debt to society and his reintegration into the free community. Punishment on the installment plan is forbidden. Dunne claims to be a victim of it.

■ The common law rule has not been successfully invoked for many years, but we are not disposed to question its continued vitality in the core area of its application,

when the government is trying to delay the expiration of the defendant's sentence. It is only a rule of interpretation, however—an attempt, though like another rule of interpretation of criminal statutes, the doctrine of entrapment, an attempt laden with considerations of policy, to divine the will of the legislature. It is not a constitutional command, although appeals are sometimes made, for the most part unavailingly, to notions of double jeopardy or due process. *United States v. Melody, supra,* 863 F.2d at 504; *Commonwealth v. Simon,* 526 Pa. 69, 584 A.2d 895 (1990); but see *Shields v. Beto, supra.* And this brings us to the first question raised by Dunne's appeal, whether the violation of the rule can be rectified by a habeas corpus proceeding. We think it can be. As we explained in our recent opinion in *Waletzki v. Keohane,* 13 F.3d 1079, 1081 (7th Cir.1994), the principle that habeas corpus is available only to correct fundamental defects—defects of a constitutional or at least quasi-constitutional dignity—is limited to cases in which habeas corpus is being used as the vehicle for a collateral attack on a criminal judgment. The grounds for such an attack are limited, generally to constitutional defects in the judgment. When habeas corpus is being used for a different purpose—here as a vehicle for direct review of an order of confinement that is not a part of the sentence—the error claimed to vitiate the order need not be fundamental, though it must be grave enough to warrant the remedy of releasing the petitioner from custody.

 Dunne brought this habeas corpus proceeding not to challenge the criminal judgment against him but to challenge the implementation of the judgment by the prison authorities. Obviously it is not the kind of thing that he could have challenged in a direct appeal from his conviction and sentence, for the wrong if any occurred after he began serving his sentence.

So the question whether the rule against installment punishment was violated in Dunne's case is before us. But it is clear that it was not violated. Even if reclassification from federal prisoner to state boarder, with no release into the free community,

might be thought to violate the rule if it resulted in postponing the date at which the prisoner's last sentence would expire, there was no postponement. On the contrary, since the Bureau of Prisons was not required to make the federal conspiracy sentence run concurrently with rather than consecutively to Dunne's state sentence, *United States v. Smith,* 5 F.3d 259, 261 (7th Cir.1993), it could have deemed service of all his federal sentences to begin on March 18, 1991, when his state sentence expired, in which event his last federal sentence would expire five years later.

The other issues presented do not require discussion. The judgment of the district court is

*AFFIRMED.*