NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 6, 2007
Decided June 21, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-2789

| | |
|---|---|
| KIRK E. BINTZLER, | Appeal from the United States |
| *Petitioner-Appellant,* | District Court for the |
| | Eastern District of Wisconsin. |
| *v.* | |
| | No. 00 C 1309 |
| ALBERTO R. GONZALES, | |
| United States Attorney General, and | Thomas J. Curran, |
| HARLEY G. LAPPIN, Director of the | *Judge.* |
| United States Bureau of Prisons, | |
| *Respondents-Appellees.* | |

**O R D E R**

A dozen years ago, in an unpublished order, we rejected Kirk Bintzler's challenge to a 75-month sentence he received in 1994 in the United States District Court for the Eastern District of Wisconsin. United States v. Bintzler, 56 F.3d 67 (7th Cir. 1995). The sentencing judge was the Honorable Thomas J. Curran. Having properly exhausted his administrative remedies, see United States v. Wilson, 503 U.S. 329, 335-36 (1992), Mr. Bintzler is back today in this federal habeas corpus action (28 U.S.C. § 2241), arguing that he has served his sentence and is entitled to be released from custody. The government, acting through the Attorney General and the Bureau of Prisons (BOP), says not so fast--Bintzler's sentence concludes on June 29, 2008.

To understand this dispute, we recite, in painful detail, the chronology of events that brought us to this point.

March 16, 1994:       Kirk E. Bintzler is arrested by the Milwaukee Police Department and placed in custody at the Milwaukee County Jail.

March 21, 1994:       Bintzler is charged in Milwaukee County Circuit Court, Case No. F-940965, with theft by fraud and making false statements in applications for certificates of title; cash bail is set and Bintzler is remanded to the Milwaukee County Jail; the case is tabbed to then-Milwaukee County Circuit Court Judge Diane S. Sykes, now a judge on this court.

June 14, 1994:        Bintzler is indicted in the United States District Court for the Eastern District of Wisconsin on two counts of felon in possession of a firearm, Case No. 94-CR-87; the indictment involves facts relating to his arrest on the state charges.

July 1, 1994:         On a writ of habeas corpus ad testificandum procured by the United States, Bintzler is arraigned on the federal indictment; a federal detainer is placed upon him at the Milwaukee County Jail by a magistrate judge.

July 21, 1994:        On another writ of habeas corpus ad testificandum procured by the United States, Bintzler appears in federal court for an evidentiary hearing on a motion to suppress evidence.

August 9, 1994:       Bintzler again appears in federal court on a writ of habeas corpus ad testificandum and enters a plea of guilty to one count of the indictment.

September 12, 1994:   Back in state court, Judge Sykes releases Bintzler from custody without bail based upon the state's failure to comply with his speedy trial right; Bintzler, however, is not released and continues to be held in the Milwaukee County Jail.

November 9, 1994:     Bintzler appears, via a writ of habeas corpus ad testificandum, before Judge Curran in federal court and is sentenced to a term of 75 months imprisonment.  In

imposing the sentence, Judge Curran points to Bintzler's criminal record, which includes convictions for armed robbery, fourth degree sexual assault, and a prior charge of felon in possession of a firearm. At the hearing, Bintzler inquires about credit for 237 days served based upon his arrest on March 16, 1994; both the government and the probation officer represent that Bintzler is in state custody, which Bintzler denies; Judge Curran indicates that additional investigation is needed, and that if the BOP cannot resolve the dispute, then he will review the matter; Bintzler is returned to the Milwaukee County Jail.

November 18, 1994:    A written judgment is entered by the district court that recommends that Bintzler be imprisoned at the Federal Correctional Institution in Oxford, Wisconsin.

November 22, 1994:    The United States Marshals place a federal detainer upon Bintzler at the Milwaukee County Jail, indicating that "When the subject is to be released from your custody, please notify this office at once so that we may assume custody if necessary."

November 28, 1994:    The trial of the state case is adjourned; Judge Sykes indicates to Bintzler her understanding that he is in federal custody and will be "sent back."

June 20, 1995:    Bintzler is convicted after a state court trial and sentenced to an aggregate term of 15 years, to run consecutive to the federal sentence Judge Sykes believes he is then serving. In passing sentence, Judge Sykes notes that Bintzler is a career criminal and a danger to the community. Judge Sykes asserts her belief that the federal sentence will be served before the state sentence commences.

June 21, 1995:    The United States Marshals Service communicates to the Milwaukee County Jail that they understand Bintzler to be the state's prisoner "until all state charges/sentences have been handled."

June 22, 1995:    Judge Sykes issues an order modifying the judgment of conviction in the state case to delete the reference to the state sentence running consecutive to the federal sentence

so that Bintzler can be immediately transferred to the Wisconsin State Prison; the judge asserts that "By operation of federal law and pursuant to the federal detainer, Bintzler's federal sentence will automatically follow the service of his sentence in this matter."

June 26, 1995:       Bintzler is transferred to a state penal institution to begin serving his sentence.

April 15, 1999:      A state prison registrar writes to Judge Curran about Bintzler's sentence and credit so that his "programming needs may be adequately addressed and the parole commission informed of the structure (of his sentence)."

May 5, 1999:         Judge Curran indicates that Bintzler was in state custody at the time of his federal sentencing and returned there after the sentencing, with a federal detainer placed upon him; the judge asserts that while he could not make his sentence consecutive to the state sentence at the time of the federal sentencing, the federal sentence is to run consecutive to the state sentence.

August 16, 1999:     Bintzler asks the Bureau of Prisons to exercise it's authority under 18 U.S.C. § 3621(b) and designate the state facility as the place for service of his federal sentence.

September 20, 1999:  The BOP informs Bintzler that his federal sentence will commence upon completion of the state sentence.

April 20, 2004:      Bintzler is released on state parole and taken into federal custody to begin service of his federal sentence; his projected release date is June 29, 2008.

For Bintzler, the key time period dates from his federal sentencing, November 9, 1994, to June 1995, when he was sentenced in state court. Throughout this period, Bintzler was confined to the Milwaukee County Jail, a state detention facility. Judge Sykes released Bintzler from state custody on September 12, 1994, but apparently nobody got the memo, because he remained confined there throughout his federal court proceedings, including his sentencing. Today this would not raise an eyebrow, because the Milwaukee County Jail has a contract with the United

States Marshals Service to hold federal prisoners.  See 18 U.S.C. § 5003(a).  But no such contract was in place in 1994; Binztler should have been held in a federal facility.[1]

In any event, because the BOP believed that the state maintained custody of Bintzler, it did not believe his federal sentence commenced following its imposition by Judge Curran. Bintzler, therefore, continued to sit in the county jail from November 1994 until June 1995 without being in official state custody and without officially serving any federal time.  When Judge Sykes issued her sentence, she assumed (reasonably) that Bintzler's federal clock was running and directed that his state sentence start when the former was over--in other words, that the sentences run consecutively.  But after learning that the federal marshals considered him to be in state hands, she modified the judgment and directed that Bintzler immediately begin his state sentence.  Only when that was completed in 2004 did his federal sentence officially commence.

The BOP later realized that a mistake occurred, so it deducted from Bintzler's federal sentence all of the jail time he served from his initial state arrest until the commencement of his state sentence:  456 days.  But Binztler believes this was not enough.  He contends that whether the BOP realized it or not, his federal sentence actually commenced on November 9, 1994, and that once it realized this, the BOP should have resolved the error by designating the state facility where he served his state sentence as "the official detention facility at which the [federal] sentence is to be served" under 18 U.S.C. § 3585(a) in order to avoid the possibility that Bintzler would end up serving his federal sentence in installments.

Section 3585(a) provides in full:

> Commencement of sentence.  A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

Bintzler argues that when he spent almost 8 months at the county jail between convictions he was "in custody awaiting transportation to" the federal detention facility, and therefore his federal sentence had commenced.  In his view, because of the common law rule that a sentence must be served continuously absent some fault of the prisoner, Dunne v. Keohane, 14 F.3d 335,

---

[1]  Bintzler not so subtly hints that this error was an intentional one perpetrated by federal authorities, but the record suggests otherwise.  At his federal sentencing, for example, the United States and Binztler's probation officer both described him as being in state custody, and 9 days later the marshals felt the need to put a federal detainer on him at the county jail.  Why no state official realized the mistake at that juncture (or better yet at the time of Judge Sykes' order in the first place) and/or informed the federal authorities has never been explained.

336 (7th Cir. 1994) ("Punishment on the installment plan is forbidden."), the BOP was required to let his federal sentence continue even after his state sentence began--that is, to allow him to serve both sentences at the same time.

We fail to see how Bintzler's federal sentence can be considered to have "commenced" in 1994, considering that all indications are that the BOP had a good faith belief that he was still in state custody, see Binford v. United States, 436 F.3d 1252, 1256 (10th Cir. 2006), but in the end it makes no difference, because the continuous service rule is not implicated by the BOP's conduct. The rule is of dubious application where the government has not intentionally sought to delay Bintzler's imprisonment and in any event is not violated where no postponement of the prisoner's release date results. Dunne, 14 F.3d at 337. Bintzler's counsel conceded, correctly, at oral argument that he was not directly asserting that Bintzler spent extra time in prison as a result of the mistake. As we have said, once it learned of the error, the BOP credited all his Milwaukee County Jail time against his federal sentence. Although Bintzler posits that his state parole status might have been affected by the recognition that his federal sentence was already complete, this is too speculative a theory upon which to conclude that the BOP abused its discretion in making its determination about the starting date for the service of his federal sentence.

Bintzler makes one further argument. Pointing to a 2000 letter written by Judge Curran at the solicitation of the BOP advising that "[i]t is clear . . . that the federal sentence is to run consecutive to the state sentence," Bintzler notes that a district court judge has no authority to decide how a federal sentence should be served in relation to another sentence that has not yet been imposed. See Romandine v. United States, 206 F.3d 731, 738 (7th Cir. 2000).

But under 18 U.S.C. § 3621(b), the BOP may consider a range of factors when deciding when sentences commence and how they are served, and one of these is statements made by the sentencing court. Judge Curran's letter was not an order with binding legal effect, it was advice, shared with the BOP upon its own request.

Besides, in judging whether the BOP abused its discretion, we note that both Judges Sykes and Curran, when imposing their sentences, wanted them to be served consecutively because both determined that Bintzler's prior criminal record was awful. The BOP, in making the call that it did, followed the intentions of the judges. Under these circumstances, it's hard to see how that call could be branded as an abuse of discretion.

The judgment of the district court is AFFIRMED.