NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3739
_____

MAURICE KING,
                              Appellant
                    v.

PAUL M. SHULTZ, Warden; UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 08-cv-02850)
District Judge:  Honorable Noel L. Hillman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 9, 2010
Before:  SCIRICA, SMITH and VANASKIE, Circuit Judges

(Filed: November 10, 2010)

_____

OPINION OF THE COURT
_____

PER CURIAM.

      Maurice King, a federal prisoner, filed a petition pursuant to 28 U.S.C. § 2241 to

challenge the calculation of his sentence by the Bureau of Prisons ("BOP").[1]  The District

Court denied his petition, and King appeals.

_____

[1]The name of the respondent, Paul Schultz, who is the warden where King is detained, is
misspelled in the caption.

We have jurisdiction pursuant to 29 U.S.C. § 1291. We exercise plenary review over the District Court's legal conclusions. See Barden v. Keohane, 921 F.2d 476, 479 (3d Cir. 1990). We uphold any factual determinations in a habeas proceeding unless they are clearly erroneous. See Wilson v. Beard, 426 F.3d 653, 659 (3d Cir. 2005).

First, we set forth the relevant facts, which are familiar to the parties. On September 17, 1982, a state court sentenced King to a 10-year term of imprisonment, which he completed on June 7, 1992. Pursuant to a writ of habeas corpus ad prosequendum, King entered federal custody on November 12, 1982. On March 19, 1983, King was sentenced to a 50-year term of imprisonment without parole. He appealed the judgment and won a reversal of his conviction. On remand, a jury found him guilty (except on one count of the indictment), and on June 19, 1987, the court again imposed the sentence of 50 years in prison without parole. [2] The court explicitly ruled that the federal term was to run concurrently with the state sentence. On October 17, 1989, King was sentenced on separate federal charges to 360 months of imprisonment, 96 months of which was to run consecutively with the 50 year federal sentence that King was already serving. The court did not discuss the state term in the judgment.

The BOP calculated King's release date by determining the projected release date for his first federal sentence, and then adding the consecutive 96 month term of the second federal sentence. The most current estimate in the record is January 6, 2013,

---

[2]We are aware of the other terms imposed to run concurrently with the 50-year term, but, as they do not affect the calculation, we do not describe them in detail.

which takes into account that the first term started when it was imposed in 1983, that King was due some prior custody credit for some months in 1982, and that the gain and loss of good time credits must be considered. To determine the start date of the second federal sentence, the BOP subtracted 264 months (the balance of the 360-month term) from the projected release date of the first federal sentence. Under this calculation, the BOP determined that the second federal term commenced on November 7, 1993,[3] and will be completed (assuming good time credits earned and subtracting good time credits lost) on January 7, 2020.

King argues that the District Court should have granted him relief because the BOP's calculation is improper and an abuse of discretion. He argues that the BOP improperly calculated the day on which his second federal sentence commenced and that the BOP impermissibly interrupted his second federal sentence.

The BOP, as the delegate of the Attorney General of the United States, see 28 C.F.R. § 0.96, is responsible for computing federal sentences. See United States v. Wilson, 503 U.S. 329, 334-37 (1992). The computation requires a determination about when the sentence commenced and about whether credit is awardable for time already spent in custody. See Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.) *aff'd without opinion*, 100 F.3d 946 (3d Cir. 1996). Ordinarily, a federal sentence commences

---

[3]In his brief on appeal, King uses another date, February 3, 1994, that appears in an earlier BOP explanation of the sentence calculation, but we will use the date the BOP most recently relied on. In any event, the exact date is unnecessary to the analysis of the legal principles involved.

when a defendant is received into custody or arrives voluntarily at the facility where the sentence is to be served.  See 18 U.S.C. § 3585(a).  However, in this case, if the BOP received King to serve his entire second federal sentence continuously from the day that the sentence was imposed, it would thwart the sentencing judge's mandate that a portion of that sentence run consecutively.  See 18 U.S.C. § 3584(a).  Furthermore, as the sentencing judge did not address the state sentence in the relevant judgment, King could not have begun to serve the second federal sentence before June 7, 1992.  See id. (stating that multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently).  For these reasons, by receiving King into federal custody to begin serving the sentence in November 1993, and by running the sentence concurrently in part and consecutively in part, the BOP is properly effectuating the sentencing court's mandate.

King argues that the BOP's method of calculating his sentence essentially causes an impermissible interruption of his sentence (that is, it is as if the BOP started his sentence on the date of its imposition, then interrupted it so that the remainder may be served after the end of his first federal sentence).   A common law rule holds that a defendant is entitled to be credited for time served when he is imprisoned discontinuously through no fault of his own.  See Free v. Miles, 333 F.3d 550, 554 (5th Cir. 2003).  However, the rule applies only to serve a limited purpose -- "to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations."  Id.; see also White v.

4

Pearlman, 42 F.2d 788, 789 (10th Cir. 1930) (describing with examples the evil the doctrine is meant to prevent). Piecemeal incarceration does not "justify or mandate" an earlier release when a prisoner is serving the time intended by the judgment of sentence. See Free, 333 F.3d at 555; see also Dunne v. Keohane, 14 F.3d 335, 335-337 (7th Cir. 1994) (describing the rule as a rule of interpretation and concluding that it is not violated where there was no postponement of the date on which a prisoner's last sentence would expire). Accordingly, even if King could be thought to be imprisoned discontinuously on the second federal sentence, he suffers no harm remediable by the rule because the sentencing judge mandated that a portion of his second federal sentence be served consecutively to his first federal sentence.

King also argues that his two federal sentences should be aggregated. Under the current statutory scheme, "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584. However, only King's second federal sentence, for crimes committed after the effective date of the Sentencing Reform Act, is a "new law" sentence. King's first federal sentence is an "old law" sentence for crimes committed before November 1, 1987. The BOP has a policy of not aggregating an "old law" sentence with a "new law" sentence. See Bureau of Prisons Program Statement 5880.28, *Sentence Computation Manual CCCA*, Page 1-5. According to the respondent, the policy was promulgated because of the differences in the way good time credits are calculated under the two sentencing schemes, among other things.

5

To evaluate the BOP's construction of the statute, we first must determine if "Congress has directly spoken to the precise question at issue." See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984); Stiver v. Meko, 130 F.3d 574, 577 (3d Cir. 1997) (quoting Chevron). If Congress has directly spoken on the issue with unambiguous legislative intent, we inquire no further; if, however, a statute leaves a gap for an agency to fill, we will uphold the agency's interpretation if the agency chooses a reasonable accommodation of conflicting policies that were committed to its care by statute. Id. However, we only give "some deference" to program statements (as opposed to the greater deference awarded to regulations under Chevron) because the statements are merely internal agency guidelines that the BOP may alter at will. See id. at 578.

In this case, Congress called for aggregation of "multiple terms of imprisonment" for "administrative purposes." There is a gap in the statute, which does not explicitly require aggregation of terms from crimes under different statutory schemes nor require aggregation for the purpose of awarding good time credit. Because of the ambiguities, the BOP could seek to fill the gap with its program statement. And, in light of the differences between how good time credits are calculated under the two schemes, compare, e.g., 18 U.S.C. § 3624(b) (repealed) with 18 U.S.C. § 3624(b)(1), (2), the BOP's interpretation that terms should not be aggregated for adding or subtracting good time earned is reasonable. By not aggregating the sentences, the BOP is able to maintain the separate rules for calculating the length of "old law" versus "new law" sentences.

6

In short, we conclude that the District Court properly denied King's petition because the BOP did not err in calculating King's sentence in such a way as to resolve a conflict between two statutory schemes and to preserve the 96 months that King must serve consecutively to his first federal sentence. Accordingly, we will affirm the District Court's judgment.