**Donald E. COZINE, Petitioner,**

v.

**Joseph H. CRABTREE, Warden, Federal Correctional Institution, Sheridan, Oregon, Respondent.**

No. CV–97–1510–ST.

United States District Court, D. Oregon.

July 2, 1998.

Michael Levine, Federal Public Defender's Office, Portland, OR, for Petitioner.

Craig Casey, Asst. U.S. Atty., Portland, OR, Teresa Cruise, for Respondent.

## OPINION

STEWART, United States Magistrate Judge.

Petitioner Donald E. Cozine ("Cozine") brings this *habeas corpus* petition under 28 USC § 2241 against respondent, Joseph Crabtree, the warden of the federal institution in which Cozine is presently imprisoned. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). For the reasons set forth below, the petition is granted. The court concludes that Cozine was entitled to be released from prison on November 25, 1996, and has been wrongly confined ever since. Respondent must release Cozine no later than July 13, 1998, unless the United

States Court of Appeals for the Ninth Circuit grants a stay.

## BACKGROUND

On April 9, 1992, Cozine was arrested in California by the Santa Clara Police Department on state narcotics charges. Santa Clara Municipal Court Case No. D9279977. On April 10, 1992, he was released on bond. On December 4, 1992, Cozine was arrested in Alabama by the Huntsville Police Department on Alabama charges of conspiracy to traffic cocaine. Madison County District Court Case No. DC92–7642. At some point, a bench warrant was issued by California authorities after Cozine failed to appear on the state drug charges. According to respondent, "[o]n December 8, 1992, while in Alabama state custody, California authorities served a fugitive from justice warrant on [Cozine] for failing to appear on the April 9, 1992 charges. On December 9, 1992, [Cozine] waived extradition to California [but] remained in the primary custody of Alabama authorities." Respondent's Supplemental Answer, p. 6. At oral argument, the parties were unable to provide further details in response to this court's questions concerning the California warrant, *e.g.*, whether it was actually executed or simply lodged as a detainer. However, it is undisputed that Cozine remained in an Alabama jail, where he was being held to face Alabama charges.

In March 1993, a federal grand jury in Alabama indicted Cozine on federal drug charges arising out of the same conduct for which he had been arrested by the Huntsville Police Department. On April 13, 1993, federal authorities obtained physical custody of Cozine via a writ of *habeas corpus ad prosequendum*. Although Cozine was in federal custody, he was lodged in the Jefferson County Jail. On May 14, 1993, an Alabama grand jury "no billed" the state charges against Cozine, which were then dismissed. On May 18, 1993, Cozine appeared in federal court in Alabama and pled guilty to federal narcotics charges. *United States v. Cozine*, No. CF–93–H–065–NE–001. On or about June 10, 1993, Cozine appeared before the United States District Court for the North-

ern District of Alabama, and was sentenced to 37 months of imprisonment, to be followed by a 36 month term of supervised release. The judgment provides that:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of THIRTY–SEVEN (37) MONTHS.
>
> The court makes the following recommendations to the Bureau of Prisons: the court expressly directs that the defendant is to receive credit on his sentence for each day he has served in custody since his arrest on December 4, 1992.

Judgment of Conviction in No. CF–93–H–065–NE–001, p. 2 (Respondent's Answer, Ex. A, p. 30).

What happened next remains somewhat murky, despite this court's attempt to obtain clarification. According to respondent, on June 29, 1993, federal authorities purported to "return" Cozine to Alabama authorities, notwithstanding that Alabama had dismissed all charges against Cozine. Respondent's Supplemental Answer, pp. 6–7. Since federal authorities already were lodging Cozine in the Jefferson County Jail, even while he was in federal custody, it is unclear whether the June 29, 1993 "transfer" was a physical transfer of Cozine to another location or whether the transfer occurred only on paper.

On July 14, 1993, Cozine was extradited to California to face state charges unrelated to the federal and Alabama charges. On April 18, 1994, Cozine was sentenced to ten years in prison on the California charges. The judgment of conviction in that case expressly provides that:

> THIS SENTENCE CONCURRENT W/US DISTRICT COURT NORTHERN DISTRICT OF ALABAMA # 93–H–065–NE. COURT RECOMMENDS DEFENDANT SERVE FEDERAL SENTENCE IN CALIFORNIA.

Judgement of Conviction, Santa Clara County Superior Court Cases No. 169442, 169443, 169444 (Petition, Ex. A).

On May 2, 1994, the California state court ordered that Cozine be given 383[1] days cred-

---

1. Several documents refer to 573 days of credit for time served, but that consisted of 383 days of

it toward his state sentence for time already served. On April 4, 1995, the California sentence was modified to an 80-month term, apparently to correct an error in sentence computation, but otherwise was unchanged. Answer, Ex. A, p. 40.

With respect to concurrent sentences imposed by California and another jurisdiction, California law provides:

> In any case in which ... a prisoner of another jurisdiction is, before completion of actual confinement in a penal or correctional institution of a jurisdiction other than the State of California, sentenced by a California court to a term of imprisonment for a violation of California law, and the judge of the California court orders that the California sentence shall run concurrently with the sentence which such person is already serving, the Director of Corrections shall designate the institution of the other jurisdiction as the place for reception of such person within the meaning of the preceding provision of this section. He may also designate the place in California for reception of such person in the event that actual confinement under the prior sentence ends before the period of actual confinement required under the California sentence.

Calif. Penal Code § 2900(b)(2).

■ Consistent with that statutory mandate, a long line of California cases holds that when a criminal defendant receives a California sentence which is to run concurrently with a preexisting foreign sentence (*i.e.*, one imposed by another jurisdiction), the defendant is entitled to be transferred to the foreign authorities, and to have the foreign prison designated as the place for service of the California sentence. *See, e.g., In re Stoliker*, 49 Cal.2d 75, 76, 315 P.2d 12, 13 (1957); *In re Altstatt*, 227 Cal.App.2d 305, 306, 38 Cal.Rptr. 616, 617 (1964). This ensures that the concurrent aspect of the sentence is made effectual and not nullified. *Id.*

Alternatively, if the California sentence is longer than the sentence from the other jurisdiction, § 2900(b)(2) also allows the Califor-

nia prison to be designated as the site for concurrent service of both sentences. The California sentencing judge clearly anticipated that the latter scenario would apply here, and expressly recommended that the California prison be designated as the site for service of the federal sentence.

While the details are a little hazy, the parties agree that California authorities formally notified their federal counterparts that Cozine was serving a California sentence that had been ordered to run concurrent with a pre-existing federal sentence. Unfortunately, respondent has been unable to provide this court with copies of that correspondence, or of prior communications (if any) on the same topic.

Respondent has provided this court with a copy of the following letter dated June 3, 1996, which was signed by Charles A. Dickerson, Regional Designator of the Bureau of Prisons ("BOP") and addressed to "M. Wilson, CCRM, CMC East Records, California Department of Corrections, California Men's Colony East" in San Luis Obispo, California:

> We are in receipt of your correspondence requesting that Mr. Donald Edward Cozine serve his State and Federal terms concurrently in a Federal facility.
>
> A review of the enclosed documentation reflects that Mr. Cozine is currently serving a six year, eight month California State sentence. Additionally, Mr. Cozine has a detainer filed by the United States Marshals Service for Narcotic Violations for which he received a 37 month term to be served consecutive to his State term. His tentative parole date is scheduled for November 26, 1996. At that time he will be released to the custody of the United States Marshals Service who will execute the detainer for service of his Federal term.
>
> We trust the above information adequately responds to your In re Stoliker request.

Ex. 1, May 28, 1998 hearing.

On November 25, 1996, Cozine was paroled from his California sentence and im-

---

"actual credit" plus an additional 190 days of "good time" credits. *See* Answer, Ex. A, pp. 3, 4, and 40.

mediately taken into custody by federal authorities, who insisted that he had not yet served the 37–month term imposed by the federal court in Alabama. Respondent has refused to credit Cozine with any of the time that he spent in a California prison serving a sentence that was expressly ordered to run concurrently with his pre-existing federal sentence. Cozine also complains that, notwithstanding the express directive in the federal judgment that Cozine receive credit "on his sentence for each day he has served in custody since his arrest on December 4, 1992," respondent has credited him for only 115 days, from December 4, 1992, through March 28, 1993.

Respondent has calculated Cozine's release date as April 8, 1999, contingent upon qualifying for good time credits. Otherwise, his release date could be as late as August 31, 1999. Following his release, Cozine is subject to a three-year term of supervised release. Cozine also will be on parole from California, assuming that state's term of parole has been tolled while he is in federal prison. The parties also agree that if Cozine is entitled to credit against his federal sentence for time served in prison (1) since his arrest on December 4, 1992, or (2) since entry of the judgment of conviction in the federal case on June 10, 1993, or (3) since he was incarcerated in California, then his federal sentence expired prior to his parole from California on November 25, 1996. Even if Cozine is entitled to credit against the federal sentence only from the time that he commenced serving his state concurrent sentence on April 18, 1994, his federal sentence still would have expired by now, and respondent would have no legal right to detain him further.

After exhausting all administrative remedies, Cozine filed this § 2241 petition on October 20, 1997. On May 5, 1998, the court requested supplemental briefing and argument. On May 28, 1998, this court heard oral argument and received exhibits. The court also gave respondent until June 5, 1998, to supplement the record with additional documents relating to the June 3, 1996, letter from the BOP to California corrections officials.

## DISCUSSION

The federal court sentenced Cozine to 37 months in prison. Cozine has now been incarcerated for almost 67 months, yet respondent refuses to release him, insisting that Cozine still. owes another 14 months on his federal sentence. At the heart of this case is respondent's refusal to honor the concurrent sentence that California imposed on Cozine. Without a court order, respondent unilaterally transformed Cozine's concurrent state sentence into a consecutive sentence, and thereby extended the duration of his incarceration by three years.

Respondent has justified his actions on five grounds. First, he contends that under 18 USC § 3584(a), the federal sentence automatically runs consecutively to the California sentence unless the federal judge expressly ordered that it run concurrently. Second, respondent asserts that Assistant United States Attorney ("AUSA") Chambers, who prosecuted Cozine on the federal charges in Alabama, advised a BOP employee, Julia Clemens, that he thought the federal judge would have wanted the sentences to run consecutively had he been asked. Third, respondent relies upon 18 USC § 3585(a), which provides that a sentence of imprisonment "commences on the date the defendant is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." Fourth, respondent contends that Cozine's federal sentence could not have commenced to run prior to November 25, 1996, because "the U.S. Marshal did not have exclusive custody of Petitioner." Respondent's Answer to Petition, p. 3. Finally, citing 18 USC § 3585(b), respondent says that he denied Cozine credit for time served after March 28, 1993, notwithstanding the federal sentencing judge's express order to the contrary, because California gave Cozine credit against his concurrent California sentence for that period of time.

Several different paths may be followed to analyze this petition, but each ultimately leads to the same result, namely that respondent is unlawfully detaining Cozine and must immediately release him from prison.

## I. Concurrent v. Consecutive Sentences

### A. Laws Governing Service of Concurrent Sentences

#### 1. 18 USC § 3585(a)

A federal prison sentence commences to run "on the date the defendant is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served," 18 USC § 3585(a) (formerly 18 USC § 3568). This rule can be problematic when the defendant receives a state sentence that is to be served concurrently with the federal sentence. Trouble typically arises when the inmate serves part or all of his concurrent sentences in a state prison but, upon his release, federal authorities refuse to credit any of his time in state prison toward service of the federal sentence, citing § 3585(a) (or its predecessor, § 3568). In the past, this scenario sometimes resulted in an inmate being compelled, in essence, to serve his sentence a second time. For example, in *Del Guzzi v. United States,* 980 F.2d 1269 (9th Cir.1992), an inmate was forced to serve a seven year state term followed by a five year federal term, even though the state sentence was expressly ordered to run concurrently with the federal term. The state prosecutor had even argued for and obtained a longer state sentence precisely because the two sentences were intended to run concurrently.

Some judges also have expressed concern that by manipulating the order or the location in which the sentences are served, *i.e.,* whether the inmate initially commences service of his concurrent sentences in a state or federal prison, low-level prison officials can effectively override the decisions of the state and federal sentencing courts (or, prior to 1984, the federal sentencing judge's recommendation[2]) and decide for themselves how long the inmate remains in prison. *See, e.g., Smith v. Swope,* 91 F.2d 260, 262 (9th Cir. 1937); *Kiendra v. Hadden,* 763 F.2d 69, 72–

73 (2d Cir.1985); *United States v. Croft,* 450 F.2d 1094, 1096–99 (6th Cir.1971); *Gillman v. Saxby,* 392 F.Supp. 1070 (D.Haw.1975); *Millard v. Roach,* 631 A.2d 1217, 1224 (D.C.App.1993); *Thomas v. Whalen,* 962 F.2d 358, 364 (4th Cir.1992) (concurring opinion of Judge Hall); *Thomas v. Brewer,* 923 F.2d 1361, 1369–70 (9th Cir.1991) (separate opinion of Judge Reinhardt). *See also Del Guzzi,* 980 F.2d at 1272 (concurring opinion by Judge Norris, noting that federal officials had allowed Del Guzzi's co-defendant to transfer to federal prison and serve his sentences concurrently, but not Del Guzzi, as a result of which the co-defendant had already been released while Del Guzzi remained in prison). Alternatively, the order or the location in which the sentences are served—and thus the duration of incarceration—may be left to little more than random chance, which also can lead to arbitrary results.

#### 2. California Penal Code § 2900(b)(2)

To prevent this problem from arising and to ensure that defendants actually receive the benefit of their concurrent sentences, California law mandates that when a defendant receives a California prison sentence that is to be served concurrently with a federal sentence, California authorities must offer to transfer the prisoner to federal authorities and then designate the federal prison as the place for service of the concurrent state sentence. Calif Penal Code § 2900(b)(2); *In re Stoliker,* 49 Cal.2d at 76, 315 P.2d at 13. That way, the inmate is physically in federal custody and, pursuant to § 3585(a), the federal sentence may commence to run, while also allowing the concurrent state sentence to run in accordance with state law. Alternatively, federal authorities may designate the state prison as the place where the federal sentence is to be served, which achieves the same result. The latter method usually is employed when the federal sentence would expire before the concurrent

---

**2.** Prior to the enactment in 1984 of 18 USC § 3584, the rule in most circuits was that a federal sentencing judge could do no more than recommend that a sentence be served consecutively or concurrently, with the final decision being left to the Bureau of Prisons. *See, e.g., U.S. v. Myers,* 451 F.2d 402, 404 (9th Cir.1972). After

1984, § 3584 explicitly confers authority for a federal judge to order that a sentence run concurrently with, or consecutively to, a pre-existing sentence or one that is imposed simultaneously. In California, by contrast, judges have long had authority to impose concurrent or consecutive sentences.

state sentence. Calif.Penal Code § 2900(b)(2).

■ In such circumstances, California's duty to make the defendant available to the foreign authorities is absolute. It is not "a matter of judicial or administrative discretion" nor is any formal court order (apart from a concurrent state sentence) needed to trigger that duty or to effect the transfer. *In re Riddle*, 240 Cal.App.2d 707, 49 Cal. Rptr. 919 (1966); *In re Tomlin*, 241 Cal. App.2d 668, 671, 50 Cal.Rptr. 805, 807 (1966). Of course, state officials cannot compel their foreign counterparts to accept the transfer. *Tomlin*, 241 Cal.App.2d at 669, 50 Cal.Rptr. at 806 ("The law of this state requires only that Tomlin be made available, it does not and cannot compel the Commonwealth of Virginia to take him.") Nevertheless, the proper California officials must make a formal offer and receive a formal refusal by the proper officials of the foreign government. *In re Cain*, 243 Cal.App.2d 768, 52 Cal.Rptr. 860 (1966) (responsive letter from Washington Parole Board to defense counsel was insufficient to satisfy the requirement that California offer defendant to Washington so he may serve concurrent sentence there).

### 3. *BOPPS 5160.03*

■ The BOP has enacted a policy defining how the agency will address requests, such as that mandated by California law, to facilitate service of concurrent sentences. BOP Program Statement 5160.03 ("BOPPS 5160.03").[3] At oral argument, respondent emphasized a single sentence from this Program Statement which states that the BOP will not, "under ordinary circumstances (such as overcrowding in a state institution), accept

---

**3.** BOPPS 5160.03 can be downloaded from the BOP's Internet site at http://bop.gov.

**4.** The parties have been unable to determine the exact date. The court is concerned that the California request may have been made as late as the first half of 1996, whereas the concurrent state sentence was imposed in April 1994. As a practical matter, such a request ought to be made as soon as possible, so it seeks prospective action rather than a *nunc pro tunc* designation and so, if the request is denied, the inmate still has time to seek appropriate prospective relief rather than to retroactive credit after-the-fact.

transfer of the inmate into Federal custody for concurrent service." BOPPS 5160.03, p. 4. However, respondent overlooked the preceding sentence, which explains that the BOP's preference is to "designate the state institution in which the inmate is presently located for service of the Federal sentence." *Id.* Thus, BOPPS 5160.03 does not articulate any fixed rule forbidding concurrent service of state and federal sentences, but merely expresses a preference to designate the state institution as the place for serving the federal sentence, presumably to prevent states with overcrowded prisons from dumping their prisoners into the federal system.

■ BOPPS 5160.03 expressly authorizes the BOP to retroactively designate the state prison as the place for service of all or part of the federal sentence. BOPPS 5160.03, ¶ 8(b); *Barden v. Keohane*, 921 F.2d 476 (3d Cir.1990); *United States v. Pineyro*, 112 F.3d 43 (2d Cir.1997). To ensure that the time spent processing the request "is not passed on to the inmate," the designation is automatically made retroactive to "the original date of sentencing" unless the order granting the request provides otherwise. BOPPS 5160.03, ¶ 8(b). Therefore, once the inmate qualifies, retroactive designation is not the exception but the default rule.

### B. *California's Offer to Transfer Cozine and the BOP's Response*

Sometime prior to June 3, 1996,[4] California notified federal officials that Cozine was in state prison serving a sentence that had been ordered to run concurrently with a federal sentence. Although the parties have been unable to furnish the court with a copy of that communication, its contents can be in-

---

However, the date of the state request is unlikely to become a significant issue in this case, since the default rule is for the BOP to retroactively designate the state prison as the place for service of the federal sentence from "the original date of sentencing...." BOPPS 5160.03, ¶ 8(b). Respondent has not informed this court of any special circumstance that would have caused it to deny a *nunc pro tunc* designation in this instance, assuming the request for designation were otherwise granted.

ferred from the reference in the June 3 letter to "your In re Stoliker request," which refers to the California case that recognized a California inmate's right to be made available to federal authorities in order to facilitate service of a concurrent sentence. The June 3 letter from the BOP also refers to California's request that Cozine "serve his State and Federal terms concurrently in a federal facility."

The BOP's letter of June 3, 1996, flatly rejected California's offer to turn Cozine over to federal officials so that he could serve his concurrent sentences in a federal prison. The BOP never asked California whether it wanted the state prison designated as the place for service of the federal sentence, as the California sentencing judge had recommended and BOPPS 5160.03 authorizes. Rather, the BOP assumed that Cozine's federal sentence was "to be served consecutive to his State term." Ex. 1. Consequently, in the BOP's view, Cozine did not qualify for concurrent service of his state and federal terms under BOPPS 5160.03. At oral argument, respondent confirmed that interpretation.

### C. *The BOP's Erroneous Decision*

 Cozine's federal sentence does not state whether it is to run concurrently with, or consecutively to, the California sentence. The BOP therefore concluded that, as a matter of law, the federal sentence runs consecutively to the California sentence. In reaching that conclusion, the BOP relied upon 18 USC § 3584(a) which provides that a term of imprisonment runs "consecutively unless the court orders that the terms are to be run concurrently." *Ergo,* since the federal sentence was silent, it was to run consecutively to the California sentence.

The fatal flaw in the BOP's reasoning is that, at the time, the federal judge imposed sentence, as yet there was no other sentence that the federal sentence could be made concurrent with or consecutive to. Hence, § 3584(a) is inapposite. That is readily apparent from the language of the statute:

If multiple terms of imprisonment are imposed on a defendant *at the same time,* or if a term of imprisonment is imposed on a

defendant *who is already subject to an undischarged term of imprisonment,* the terms may run concurrently or consecutively. . . . Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

*Id.* (emphasis added).

 The language upon which the BOP relied comes into play only when multiple terms are imposed "at the same time" or if the defendant "is already subject to an undischarged term of imprisonment." *Id.* Otherwise, there is nothing for the federal sentence to be consecutive to or concurrent with. "Congress did not vest federal courts with the authority to impose a federal sentence to run consecutive to a state sentence that has not yet been imposed." *United States v. Clayton,* 927 F.2d 491, 492–93 (9th Cir.1991). *See also United States v. Eastman,* 758 F.2d 1315, 1318 (9th Cir.1984). Similarly, "a federal court does not acquire discretion to impose a concurrent sentence until the defendant has [already] been sentenced by another court." *United States v. Neely,* 38 F.3d 458, 461 (9th Cir.1994).

Cozine's federal sentence does not specify whether it is to run concurrently with, or consecutively to, the California sentence because the latter was not imposed until the following year. The federal judge had no reason even to consider this question, since he could not prospectively order that a sentence run concurrently with, or consecutively to, a sentence of unknown length that might (or might not) someday be imposed by another jurisdiction. Rather, that determination must be made by the second sentencing court. In this case, the second sentencing court was California, which ordered that its sentence run concurrently with the federal sentence previously imposed. Therefore, the BOP erred when it concluded that, in the absence of express language to the contrary in the federal judgment, Cozine's federal sentence automatically ran consecutively to his subsequent state sentence.

This conclusion is consistent with *McCarthy v. Doe*, 146 F.3d 118 (2d Cir.1998), which recently rejected the BOP's interpretation of § 3584(a). McCarthy, like Cozine, received a federal sentence followed by a concurrent state sentence, and was then incarcerated in a state prison. McCarthy asked the BOP to designate the state prison as the place for service of his federal sentence, in order to facilitate service of the concurrent sentences. The BOP refused, insisting (as it has here) that because McCarthy's federal sentence was silent, § 3584(a) required the BOP to treat it as a consecutive sentence. The Second Circuit disagreed. "As defendant was neither subjected to multiple terms of imprisonment at the same time nor was he already subject to his state sentence when his federal sentence was imposed, the presumption that terms of imprisonment imposed at different times run consecutively does not apply to him." *Id.* at 121. Consequently, the BOP erred by assuming that it had no authority to grant McCarthy's request for a *nunc pro tunc* designation pursuant to BOPPS 5160.03. *Id.* at 122.[5]

At oral argument, respondent also represented that it had searched the transcript of the federal sentencing hearing, in vain, for some indication that the federal sentencing judge intended for Cozine's federal sentence to run concurrently with the California sentence. While the court admires respondent's apparent diligence in searching for the proverbial needle in a haystack, respondent was focusing its efforts on the wrong haystack. The federal sentencing judge had no occasion to consider whether the sentence should run consecutively or concurrently. *See id.; Pineyro*, 112 F.3d at 44 ("The order sentencing Pineyro on the federal charge did not state that his federal sentence would run concurrently with his state sentence, nor could it have, since Pineyro had not yet been convicted or sentenced for the unrelated state offenses"); *Barden*, 921 F.2d at 484 (one reason why the federal sentencing court "was unable to order concurrency with [the state sentence was] because [the federal court] sentenced Barden before the state did").

Indeed, without knowing the duration of the future California sentence, or the charges on which it would be based, or any of the other circumstances of that case, it would have been presumptuous for the federal judge to have made an anticipatory ruling on that question without knowledge of the relevant facts. *See McCarthy*, 146 F.3d at 122. Such an anticipatory ruling by the federal court also would have interfered with California's right "to apply its own laws on sentencing for violation of state criminal laws." *Clayton*, 927 F.2d at 493, quoting *Eastman*, 758 F.2d at 1318.

Respondent should have looked to the judgment of the *second* sentencing court, which in this case was California. The California judgment of conviction expressly ordered the sentence to run concurrently with the federal sentence.

Respondent also points to an alleged telephone conversation between a BOP employee, Julia Clemens, and AUSA Chambers, who prosecuted Cozine on the federal charges in Alabama. According to respondent, AUSA Chambers thought the federal judge would have wanted the sentences to run consecutively had the judge been asked.

This court has grave doubts about the legal significance of a sentencing judge's unexpressed intentions, years after-the-fact, on a question that was not even at issue during sentencing. The point is moot, however, because respondent did not pose the question directly to the federal sentencing judge. Rather, respondent reportedly asked the prosecutor what *he* thought the judge would have wanted. If respondent thought the way to resolve the issue was by taking a poll, then at a minimum defense counsel should have been canvassed as well.

Respondent also may have misinterpreted AUSA Chambers' remarks. According to the sworn declaration of BOP employee Gloria W. Grimes:

5. There are some important differences between the relevant case law of the Second and Ninth Circuits. For instance, the Second Circuit has not adopted the *Clayton* rule that a federal sentence may not be ordered to run concurrently with, or consecutively to, a sentence that may be imposed in the future. Thus, this court does not agree with *McCarthy's* analysis in its entirety.

Petitioner's request was forwarded to me from the Bureau of Prisons' Central Office. I reviewed all available information and determined that a *nunc pro tunc* designation was not appropriate in the Petitioner's case. The federal sentencing judge did not indicate on the J & C, nor at any time since sentencing that it was the Court's intent that the Petitioner's federal and state sentences be served concurrently. Additionally, contact with the Assistant U.S. Attorney who prosecuted the case revealed that the Federal sentencing judge was aware of pending California charges and wanted the federal sentence to run consecutive to any state sentence.

Grimes Decl., ¶ 7. Grimes' conclusion that the federal judge "wanted the federal sentence to run consecutive to any state sentence" appears to be based upon the following file notation:

> 07–15–97 JULIA CLEMENS, ISM, SPOKE WITH AUSA CHAMBERS FOR CLARIFICATION OF SENTENCE AND TO ENSURE THE SENTENCE WAS ORDERED TO BE SERVED CONSECUTIVE TO "ANY" STATE SENTENCE. MR. CHAMBERS "BELIEVES" SUBJECT . SHOULD RECEIVE CREDIT FROM DATE OF ARREST UP TO DATE TURNED OVER TO CALIFORNIA AUTHORITIES. "IT WAS 'NOT' THE COURT'S INTENT FOR THE INMATE TO RECEIVE DOUBLE CREDIT." MR. CHAMBERS ALSO ADDED, THE COURT MADE A RECOMMENDATION AND HE ASKED ME IF THE BOP IS OBLIGATED TO FOLLOW THE RECOMMENDATION AND THAT THE COURT WAS AWARE OF THE PENDING CHARGES IN CALIFORNIA.

Answer, Ex. A, p. 42 (original in capitals).

This paragraph does not say that the federal judge "wanted the federal sentence to run consecutive to any state sentence," as Grimes concludes. AUSA Chambers said only that—in his opinion—the sentencing judge did not intend that Cozine receive credit against both sentences for time served in custody prior to trial or sentencing, which is a very different issue.[6] Thus, this entry does not support Grimes' conclusion that the federal judge "wanted the federal sentence to run consecutive to any state sentence" or even that AUSA Chambers made any such representation. Perhaps times' conclusion is based upon some other evidence but, if so, it does not appear in the record.

To summarize, respondent's determination that Cozine's federal sentence was to run consecutively to his state sentence—and thus Cozine was not entitled either to serve his state sentence in federal prison or to have the state prison designated as the place for service of the federal sentence— was premised upon (1) respondent's faulty interpretation of § 3584(a); which in turn (2) led respondent to ignore the language of the California judgment which expressly ordered that the state sentence run concurrently with the federal sentence; (3) a multiple-hearsay account of a conversation in which an AUSA supposedly speculated on what the federal judge might have wanted had he been asked; and (4) the federal judge's failure to state whether a sentence should run concurrently or consecutively, when in reality the judge had no authority to make such a determination and properly refrained from doing so. This decision was manifestly erroneous and contrary to law, and could not be sustained even under the most deferential standard of review.

## II. *Available Remedy*

While it is clear that respondent erred in its handling of this case, this court must still determine if Cozine is entitled to any remedy.

### A. *Refusal to Accept Custody*

██ California attempted to deliver Cozine into federal custody so that he could serve his federal sentence in a federal institution.[7] This would have eliminated any dis-

---

**6.** It also conflicts with the. federal judgment of conviction, which expressly directs that Cozine be given credit for the time he was in custody in Alabama.

**7.** By contrast, in *McCarthy,* 146 F.3d 118, the inmate merely requested a *nunc pro tunc* designation that was denied.

pute as to whether his federal sentence had been served. The BOP erroneously concluded that Cozine's federal sentence was intended or required to run consecutively to his state sentence and, for that reason, wrongly refused to accept him into federal custody.

Although California cannot directly compel another jurisdiction—which is not bound by California law—to accept the transfer of a prisoner, the Ninth Circuit recently reserved the question of whether a wrongful refusal to accept a transfer would violate the laws of the receiving jurisdiction or violate the inmate's constitutional rights. *See Isreal v. Marshall,* 125 F.3d 837, 839 n. 1 (9th Cir. 1997) (declining to decide issue not properly raised).

■ Under the specific circumstances presented here, this court holds that Cozine's federal sentence commenced to run (assuming, for the moment, that it had not already done so earlier) when federal authorities *should* have accepted custody of him to begin serving his federal sentence, after California formally tendered Cozine to federal officials. *See Kiendra,* 763 F.2d at 72–73 (sentence began to run from date federal authorities wrongly refused to accept inmate into federal custody despite tender by state officials). *Cf. Smith v. Swope,* 91 F.2d at 262 (sentence commenced to run even though federal authorities wrongly relinquished custody over inmate). It is as if Cozine had duly reported to the prison where he was to serve his federal sentence, on the appointed day, only to be turned away over his protests and through no fault of his own. However, Cozine is even worse off because in that circumstance at least he would have remained free in the interim and, though the service of the sentence might have been delayed, its duration would not have been altered. By contrast, the error here resulted in Cozine being deprived of the benefit of his California con-current sentence and being compelled to serve his time anew.

■ This court has not found any published cases concerning inmates physically turned away from the prison gates,[8] but § 3585(a) strongly hints at the correct answer. It provides that the sentence commences, *inter alia,* when the defendant "... arrives voluntarily to commence service of sentence ..." Actual admission to the prison is not a prerequisite to commencement of the sentence. Several courts have addressed a somewhat analogous circumstance in which an inmate either is improperly released from prison or federal officials have neglected to take custody of the inmate following his release from state prison. As a general rule, the inmate is entitled to full credit against his sentence so long as he was not responsible for the wrongful release. *Cf. Clark v. Floyd,* 80 F.3d 371, 374 (9th Cir.1995) (inmate entitled to full credit against federal sentence for time spent at liberty after federal officials neglected to take custody of him to begin service of consecutive federal sentence following his release from state prison); *Green v. Christiansen,* 732 F.2d 1397, 1400 (9th Cir.1984) (similar); *Dunne v. Keohane,* 14 F.3d 335, 336–37 (7th Cir.1994) (government may not delay expiration of federal sentence by postponing its commencement, and violation of that principle may be remedied in *habeas corpus* proceeding); *White v. Pearlman,* 42 F.2d 788, 789 (10th Cir.1930) (inmate who was, "in substance, ejected from the penitentiary" through no fault of his own, and despite having called the warden's attention to the error, was entitled to credit against his federal sentence for time spent at liberty); *Carson v. Florida,* 489 So.2d 1236, 1238 (Fla.App.1986) (former inmate entitled to credit against sentence for time at liberty after he was erroneously released from prison); *Ex parte Bates,* 538 S.W.2d 790, 793 (Tex.Crim.App.1976) (same).

---

**8.** In *United States ex rel. Binion v. United States Marshal for the District of Nevada,* 292 F.2d 494 (9th Cir.1961), the petitioner attempted to surrender himself to federal officials and was turned away. *Binion* is not on point, however, because the attempted surrender was premature, and hence the Marshal had no legal authority to detain Binion. Here, by contrast, federal offi-cials had no valid basis for refusing to take custody of Cozine. In addition, Binion simply walked into the Marshal's office with no advance warning, forcing the Marshal to make an immediate decision. In Cozine's case, the matter was handled by letter so federal officials had ample time to research the matter, consult superiors, and otherwise make an informed decision.

The foregoing authorities are consistent with this court's conclusion that Cozine is entitled to credit against his federal sentence for that period of time during which he would have been in federal custody but for the BOP's wrongful refusal to accept California's tender of Cozine.

*Spigner v. United States,* 452 F.2d 1208 (9th Cir.1971), is readily distinguishable. In *Spigner,* the inmate was neither tendered to federal authorities nor did he request a transfer to a federal prison. Instead, Spigner waited until his concurrent state sentence had expired, and only then sought credit against his federal sentence on the theory that federal officials had an affirmative duty to *sua sponte* transfer him to a federal prison in order to facilitate the service of his concurrent sentences. The Ninth Circuit rejected that claim, not because Spigner had no right to be transferred to federal prison but because Spigner had never requested a transfer. "The condition of the state sentence was a privilege of which he knew *and could have availed himself. He did not." Id.* 452 F.2d at 1208–09 (emphasis added).[9]

### B. *Comity*

The language of BOPPS 5160.03, and the arguments advanced by respondent during oral argument, suggest that the BOP views service of concurrent sentences as purely a matter of grace, which the BOP has no obligation to accommodate. This court does not agree with that view, at least under the circumstances presented by this case.

As the Supreme Court has recognized:

We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory.... The people for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindication of its laws.

*Ponzi v. Fessenden,* 258 U.S. 254, 259, 42 S.Ct. 309, 66 L.Ed. 607 (1922).

■■ Under the "dual sovereignty" doctrine, a criminal defendant owes a debt to two (or more) separate sovereigns, each of which may exact payment independently of the other. *See, e.g., Heath v. Alabama,* 474 U.S. 82, 88–93, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *Jackson v. Brennan,* 924 F.2d 725, 729 (7th Cir.1991). This doctrine has been invoked as authority to allow the state and federal governments to separately prosecute and punish an individual for essentially the same conduct without violating the Seventh Amendment's prohibition against double jeopardy. *Id.*

The dual sovereignty doctrine has often been cited as justification for the BOP's refusal to give inmates credit against their federal sentences for time served in a state or foreign prison. In some situations, that analysis is correct, *e.g.,* if the federal sentence runs consecutively to a pre-existing state sentence. In other circumstances, however, the dual sovereignty doctrine leads to the opposite result, requiring the BOP to give effect to a state sentence that is ordered to run concurrently with a pre-existing federal sentence.

■■ The dual sovereignty doctrine is not a one-sided rule that only operates adversely to a criminal defendant, but is neutral. Just as the dual sovereignty doctrine acknowledges and protects the rights of each sovereign to exact as *much* punishment for a crime as that sovereign desires, the doctrine also acknowledges and protects the rights of each sovereign to exact as *little* punishment for the crime as that sovereign desires.

■■ Cozine pled guilty to violating federal law. The first sovereign, the United States, fixed the punishment for this offense at 37 months in prison. Cozine later pled guilty to violations of California law. The second sovereign, California, imposed a sentence of 80 months, but expressly ordered that sentence to run concurrently with the sentence previously imposed in the federal case. In essence, California decided that, following the 37 months that Cozine would be

---

9. California law now provides that the request for transfer shall be made directly by the state, instead of placing the burden upon the individual inmate to make the request. *See In re Cain,* 243 Cal.App.2d 768, 52 Cal.Rptr. 860.

imprisoned by the United States, Cozine should serve an additional 43 months in prison (though he could be paroled before that date). Alternatively, California decided that as punishment for his state law violations Cozine should remain in prison until a certain date, after taking into account that he also would be serving a federal sentence during part of this time.

California had every right to impose such a sentence, and the United States—as the first sovereign—had no cause to complain. The federal government was entitled to imprison Cozine for 37 months, but it had no right to tell California how much, or how little, punishment it should exact from Cozine in accordance with its laws. Similarly, had the roles been reversed and the California sentence imposed first, then the United States would have been the second sovereign and California would have no ability to interfere with federal sentencing decisions. *See, e.g., United States v. Sackinger,* 704 F.2d 29, 32 (2d Cir.1983) (since state court imposed sentence first, it could not prospectively order that its sentence run concurrently with a future federal sentence, hence federal court was free to disregard the state concurrent sentence and impose a consecutive sentence).

▪ At oral argument, respondent invoked the Supremacy Clause of the United States Constitution as authority for the BOP to ignore the concurrent sentence imposed by California. While some courts have accepted that argument, *see, e.g., Barden,* 921 F.2d at 478, n. 4, this court respectfully disagrees. A federal sentence does not automatically trump a state sentence. In matters such as this, the state and federal governments interact with each other as equal sovereigns. *See Strand v. Schmittroth,* 251 F.2d 590, 605 (9th Cir.1957) ("there is no 'federal supremacy' in the corner of the field which is specifically under consideration").[10] *See also* 28 USC § 1738 (requiring federal courts to give full faith and credit to state laws, court proceedings, and judgments).

The United States had a legitimate interest in requiring Cozine to serve his 37–month sentence in a location selected by federal authorities, as required by § 3585(a) and 18 USC § 3621(b). In part, that is a function of paying the debt owed to the sovereign, and the sovereign's right to decide such matters as the terms of confinement. In addition, it avoids improper interference in execution of the federal government's sentence. Otherwise, a criminal defendant facing a long federal prison sentence might obtain a state concurrent sentence of equal or greater length in home detention or at an honor camp in the mountains.

California law solves this problem by requiring state authorities to tender the inmate to federal officials to permit the United States to incarcerate the inmate in a facility of its own choosing. So long as Cozine was in a federal prison, or one designated by federal officials, serving his federal sentence, federal officials had no cause to complain if state authorities gave Cozine credit against his concurrent state sentence for that same time. In the absence of a consecutive sentence, this was a matter solely between Cozine and state authorities.

The United States may also have a legitimate concern that states faced with overcrowded prisons will use concurrent sentences as a vehicle for "dumping" inmates into the federal prison system, which would be obliged to accept the inmate into federal custody. Logistical problems also could arise if one of the concurrent sentences was comparatively short, which might result in the "shuttling" of inmates between state and federal prisons. California law addresses those concerns by allowing federal officials to designate a state prison as the location for service of the federal sentence.

Since California law adequately addresses any legitimate federal concerns, comity demands that federal officials acknowledge, and give effect to, the concurrent sentence that California imposed upon Cozine. Even assuming, *arguendo,* that federal officials had no duty to act proactively, *see Spigner,* 452 F.2d 1208, once California tendered Cozine to the United States to commence service of his federal sentence, federal officials were

---

**10.** Of course, the federal courts might have authority to grant relief if the particular state sentence imposed violated Cozine's constitutional rights, but that is not an issue in this case.

obliged either to accept him into federal custody for service of his federal sentence or else to designate the state prison as the place for service of his federal sentence. They did neither. Since federal officials lacked an adequate basis for their refusal, the effect of their action (or inaction) was to unreasonably deny comity to the judgment of the California court and the laws of that state.

In a federal system with 51 separate sovereigns—along with many territories and indian tribes—comity avoids conflicts between coordinate courts and governments. Various rules have been articulated to clearly delineate which court or sovereign has jurisdiction at a given time over a particular person or cause, and to minimize undue interference by other courts or sovereigns. *See, e.g., Ponzi,* 258 U.S. at 260, 42 S.Ct. 309 (first court to assume jurisdiction over subject matter of litigation has exclusive jurisdiction until it is surrendered).

Allowing the second sentencing court to determine whether a sentence is to run concurrently with, or consecutively to, the prior sentence(s), is consistent with this goal of avoiding conflicts between coordinate courts and sovereigns. This rule permits courts, corrections officials, and defendants to easily compute the sentences owed by defendants and the effect of any new sentence that may be imposed.

■ The alternative would allow one sovereign to interfere with the rights of other sovereigns by prospectively running a sentence consecutive to—or concurrent with—sentences that might someday be imposed by another sovereign, without even knowing the circumstances of those future sentences. The other sovereigns, in turn, might follow their own laws and order that their sentences run concurrently with, or consecutively to, any pre-existing sentences. The two sentences would then be in conflict, which "creates uncertainty and ambiguity" and may "result in problems in calculation of service of [the] sentence." *Eastman,* 758 F.2d at 1318. The better rule, which has been adopted by the Ninth Circuit, is that concurrent or consecutive sentences operate only with respect to sentences imposed previously or at the same time, but cannot be imposed

prospectively on future sentences, especially those from another jurisdiction. *Id.* at 1317–18; *Clayton,* 927 F.2d at 493.

Respondent's contention that it is not required to honor a state concurrent sentence is further undermined by the legislative history of § 3584(a), which reveals that Congress expressly intended to give federal judges the power to order a federal sentence to run concurrently with a pre-existing state sentence. *See* S.Rep. No. 225, 98th Cong., 2d Sess., p. 127, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3310. Section 3584(a) was intended to "be construed contrary to the holding in *United States v. Segal,*" 549 F.2d 1293, 1301 (9th Cir.1977), which held that a federal sentence could not run concurrently with a pre-existing state sentence because the federal sentence had to be served in federal prison. *Id.* Similarly, the legislative history of § 3585(a) explains that:

> The Committee does not intend that this provision be read to bar concurrent Federal and State sentences for a defendant who is serving a State sentence at the time he receives a Federal sentence. It should be possible for the Bureau of Prisons to use its authority to contract with State facilities to make equitable arrangement for a defendant to continue to reside in the State facility while serving part of his Federal sentence.

S.Rep. No. 225, p. 129, 1984 U.S.Code Cong. & Admin. News at 3312.

■ Thus, Congress clearly contemplated that a federal sentence could run concurrently with a state sentence and that the BOP would facilitate service of those concurrent sentences, *inter alia,* by designating the state prison as the place for service of the federal sentence. It would be extraordinarily provincial for the United States to assert that federal judges may impose sentences that run concurrently with pre-existing state sentences but not the other way around. Comity is a two-way street.

By refusing either to accept Cozine into federal custody for serving his concurrent sentences, or to designate the state prison as the situs for service of the federal sentence,

the BOP wrongly denied comity to the judgment of the California court and the laws of that state. Admittedly, comity is not a personal constitutional right. *United States v. Clawson,* 842 F.Supp. 428, 433 (D.Or.1994), *aff'd on other grounds,* 52 F.3d 806 (9th Cir.1995) (denying relief premised on comity because injury to state had already taken place and could not be redressed by granting *habeas* relief to inmate). Unlike *Clawson,* however, the injury in this case is a continuing one, not just to Cozine but also to California.

 Every day that Cozine remains incarcerated, respondent is continuing his refusal to honor the California judgment and the laws of that state. California is powerless to remedy this state of affairs. State courts have no power to mandamus federal officials. *State ex rel. Tran v. Christian,* 108 Ohio App.3d 578, 671 N.E.2d 337 (1996), citing *M'Clung v. Silliman,* 19 U.S. (6 Wheat.) 598, 604–05, 5 L.Ed. 340 (1821). Nor, in a situation such as this, does California have standing to sue in its own right to vindicate the judgments of its courts and the criminal laws of that state. Granting relief to Cozine is the only available means for the judicial system to redress that injury. The court also observes that Cozine's case is not an isolated incident. Federal officials' recalcitrance in honoring California concurrent sentences has been a continuing source of conflict for decades, despite efforts by California's legislature and courts to remedy this problem through the enactment of Calif. Penal Code § 2900(b) and adoption of the *In re Stoliker* doctrine.

### C. *Judicial Review of the BOP's Decision*

 As a general rule, courts have very limited authority to review decisions by agencies such as the BOP and the Parole Commission due, in part, to the kinds of decisions that those agencies are called upon to make. Typically, these decisions involve a great deal of discretion and professional judgment, such as whether a particular inmate should be paroled or where he should be housed. In making a decision, those agencies must balance many complicated and interrelated fac-

tors, including overcrowding or tensions between various prison gangs.

Not all decisions by the BOP fall into that category, however. Sometimes the decision consists solely of mathematical calculations which admit of no discretion, or requires the application of a statute by which Congress has limited the agency's discretion. Even when the decision requires the exercise of discretion, the agency must first properly interpret the relevant statutes to ascertain the scope of its discretion and the factors it must consider.

 Although judicial review is very limited, it nevertheless does exist. *See, e.g., United States v. Wilson,* 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) (Attorney General is responsible for initially computing credit for time served, but that determination is subject to judicial review); *United States v. Huss,* 7 F.3d 1444, 1449 (9th Cir.1993) (same); *Downey v. Crabtree,* 100 F.3d 662, 666 (9th Cir.1996) (although BOP has broad discretion, that "does not immunize its decisions from judicial review"). Although a federal court may not directly review the merits of a decision granting or denying parole, even if the Parole Commission abused its discretion, federal courts do have jurisdiction over claims that the Parole Commission failed to consider mandatory factors, violated the inmate's constitutional rights, made a decision "so arbitrary as to violate due process," or exceeded the statutory limits. *Wallace v. Christensen,* 802 F.2d 1539, 1551–52 (9th Cir.1986) (en banc). *See also Wajda v. United States,* 64 F.3d 385, 388 (8th Cir.1995).

A similar standard has been applied to decisions by the BOP. *See, e.g., Taylor v. Bureau of Prisons,* 1998 WL 159918 (D.Kan. 1998) (although court may not review BOP's substantive decision, it can decide whether agency's interpretation of statute was erroneous); *Paydon v. Hawk,* 960 F.Supp. 867, 870 (D.N.J.1997) (reviewing decision that inmate was ineligible for sentence reduction under arbitrary and capricious standard); *Sterling v. Edwards,* 881 F.Supp. 488, 490 (D.Kan.1995) (BOP's decision to house plaintiff in administrative segregation will be up-

held "unless the action is arbitrary and capricious").

■ Although 18 USC § 3625 precludes review under the Administrative Procedure Act of the merits of certain discretionary decisions, this court still has jurisdiction to determine whether the BOP has erroneously interpreted the relevant statute or otherwise exceeded its statutory authority. *See Fristoe v. Thompson,* 144 F.3d 627, 631 (10th Cir. 1998). Whether to follow the law is not a discretionary decision.

In the instant case, the BOP's decision was premised upon a fundamental misreading of both the applicable law and facts, which led it to believe that Cozine was serving a consecutive rather than a concurrent sentence. As a result, the BOP was unable even to recognize what issues were before it, what discretion it possessed, or what facts were relevant to the inquiry, let alone to properly apply the law and its discretion, if any, to the true facts. *Cf. McCarthy,* 146 F.3d 118 (BOP erroneously assumed it had no discretion and therefore failed to exercise it). Those errors were compounded by extensive reliance upon a questionable interpretation of a multiple-hearsay account of an *ex parte* conversation in which a prosecutor supposedly speculated what a judge might do in a particular situation that never arose. Under the circumstances, the BOP's decision was as arbitrary and capricious as if the agency had erroneously based its decision upon another inmate's file, or had simply flipped a coin.

The record also does not show that the BOP advised California of the possibility that the state prison could be designated as the site for service of the federal sentence or informed California of what information would be required to make such a determination, as required by BOPPS 5160.03. Thus, the BOP did not even follow its own mandatory procedures.

■ The court recognizes that, in the absence of a state or federal law to the contrary, a prisoner ordinarily has no liberty interest in being confined to a particular place, his right to liberty having been curtailed by the very fact of his incarceration. *See Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (prisoner not entitled to hearing and fact finding before being transferred from one prison to another). However, that is not dispositive of the instant case.

Cozine was not incarcerated in a federal prison serving a federal sentence when the challenged decision was made. He was demanding a transfer to a federal prison, to serve his concurrent sentences in accordance with his rights under California law. *Cf. Isreal,* 125 F.3d at 839 (assuming, without deciding, that this state-created right is a protected liberty interest). Accordingly, there is some question regarding the extent to which Cozine's liberty interest was curtailed or extinguished solely by virtue of his imprisonment.

In addition, the challenged decision did more than just determine *where* Cozine would serve his sentence, or the amenities of his confinement. It also purported to decide the *duration* of his incarceration and whether Cozine would serve the sentence that was imposed upon him or would be forced to serve, in essence, some other sentence. The scope of the decision at issue here extends far beyond the routine placement decisions at issue in *Meachum.*

■ Although an inmate's liberty interest may have been curtailed, he nevertheless retains a residual liberty interest that protects him against deprivations other than those authorized by his sentence. *Cf. Meachum,* 427 U.S. at 225, 96 S.Ct. 2532 (inmate had no due process right to confinement in a particular facility because confinement in any of the state's prisons was "within the normal limits or range of custody *which the conviction has authorized the State to impose* ") (emphasis added); *Ohio Adult Parole Authority v. Woodard,* —— U.S. ——, ——, 118 S.Ct. 1244, 1250, 140 L.Ed.2d 387 (1998) (inmate sentenced to death nevertheless retains a "residual" life interest, *e.g.,* in not being summarily executed by a prison guard, since that is not authorized by his sentence).[11]

---

**11.** Although only four justices joined that section of the opinion, all nine justices agreed on this particular point. *See id.* —— U.S. at ——, 118 S.Ct. at 1254 (opinions of other five justices).

Moreover, the challenged decision was not a discretionary decision in which the BOP decided where to house an inmate, but was essentially a question of law. The BOP erroneously interpreted a statute, concluding that Cozine's terms ran consecutively rather than concurrently, and fixed the duration of his imprisonment accordingly. *See McCarthy,* 146 F.3d 118 (allowing judicial review under similar circumstances).

Finally, even assuming that Cozine was not entitled to procedural safeguards such as a hearing, he still was entitled to some due process. "The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis,* —— U.S. ——, ——, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998) (internal citations omitted). Substantive due process protects against government power arbitrarily and oppressively exercised. *Id.,* citing *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). As the Ninth Circuit has observed, it would offend common notions of justice to have executive decisions with a profound effect on the life and freedom of individuals made on the basis of a dart throw, a coin toss or some other arbitrary or capricious process. *United States v. Redondo–Lemos,* 955 F.2d 1296, 1298–99 (9th Cir.1992).[12]

Even where the executive decision is essentially one of grace, such as a pardon or commutation, "[j]udicial intervention might ... be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process."

*Ohio Adult Parole Authority,* —— U.S. at ——, 118 S.Ct. at 1254 (O'Connor, J., for four justices, plus the separate opinion by Justice Stevens, and thus speaking for a majority of the Court). However, for the reasons previously stated, the decision at issue here appears to be more than simply a matter of "grace" on the part of federal officials.

This court concludes that under the circumstances presented here—where the decision was so fundamentally flawed and contrary to law, and was premised upon an impermissible interpretation of the relevant statutes—this court has the power to review and to vacate respondent's decision not to accept Cozine into federal custody or to designate the state prison as the site for concurrent service of his federal sentence.

■ Even when a federal court determines that an agency decision violated the law, ordinarily the remedy is to order the agency to reconsider its decision applying the correct standard or following the proper procedures. *See, e.g., Downey,* 100 F.3d at 671; *Rizzo v. Armstrong,* 921 F.2d 855, 861 (9th Cir.1990). In *McCarthy,* the Second Circuit remanded the matter to the BOP to "promptly review" the request for *nunc pro tunc* designation and exercise its discretion accordingly. 146 F.3d at 123. However, that is not a satisfactory remedy under the unique facts of this case.

First, if respondent erred by not allowing Cozine to serve his state and federal sentences concurrently, then he should have been released from prison on November 25, 1996. Every day that he remains incarcerated constitutes further injury. While continued wrongful imprisonment theoretically could give rise to a claim for damages, that is rarely, if ever, a satisfactory remedy when further wrongful imprisonment may still be avoided.[13] By contrast, the petitioner in

---

**12.** *Redondo–Lemos* was overruled on other grounds by *United States v. Armstrong,* 48 F.3d 1508 (9th Cir.1995) (*en banc*), but the latter was then reversed, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).

**13.** It is far from certain whether Cozine could recover damages. The initial error may have occurred when California authorities delayed tendering Cozine to federal authorities (assum-

ing, for the moment, that the BOP's June 3, 1996 letter was sent shortly after receipt of the state request). Even assuming that such a delay violated Cozine's rights and resulted in his being incarcerated for a longer term, it is unclear what remedy Cozine would have against state officials, given the potential difficulty of identifying which individual officials made the error, proof of causation, and a potential statute of limitations defense. Alternatively, if California timely tendered Cozine to federal authorities, many of the

*McCarthy* was serving a 235 month federal sentence and a concurrent seven year state sentence, both of which were imposed in 1994. *Id.*, 146 F.3d at 119. Even if the *nunc pro tunc* designation were granted, it would be many years before he was eligible for release. Consequently, there was not the same degree of urgency in *McCarthy* as is present here.

Second, Cozine is scheduled to be released in 1999. By the time respondent reconsiders its position, using the correct criteria and legal standards, the issue may be moot. That is especially true here, where respondent has continued to insist that its position was correct and left no doubt that it intends to appeal this decision, even after this court pointed out the errors in respondent's position and provided respondent an opportunity to correct its own mistakes without the court's direct intervention.

Third, given the potential for future litigation in the event it is determined that Cozine has been wrongly imprisoned, respondent may have a strong incentive to adhere to its original position in order to avoid any admission of wrongdoing. That, in turn, could color respondent's consideration of Cozine's case. By contrast, there was no issue of "false imprisonment" in *McCarthy.*

Fourth, unlike most decisions committed to the BOP, *e.g.*, where to house a particular prisoner, this decision has only two possible answers, and the relevant factors are well defined. This is not a decision that requires the agency's professional judgment and discretion.

Fifth, it is too late to simply reconsider some of the decisions that were made. For instance, even if respondent now concludes that it should have transferred Cozine to a federal prison, the damage cannot be undone by allowing him to transfer now. Only a *nunc pro tunc* designation will suffice.[14]

Finally, respondent made it clear during oral argument that it would have designated the California prison as the site for service of the federal sentence, and would have granted Cozine credit, *nunc pro tunc,* for the time he already had served, but for respondent's (erroneous) determination that the federal sentence was to run consecutively to the state sentence. Indeed, it is difficult to conceive of any legitimate federal interest that would justify a different result. In other cases, the BOP has accepted California inmates into federal custody to facilitate service of their state concurrent sentences, or else designated the state prison as the place for service of the federal sentence. *See, e.g., Thomas v. Brewer,* 923 F.2d at 1364 (Attorney General calculated Thomas's sentence as having commenced to run on the date he was originally surrendered by California to federal officials "to enable concurrent service of" his federal and state terms). Respondent has not articulated any justification for treating Cozine differently. Retroactive designation also is the default method established by BOPPS 5160.03, ¶ 8(b).

Since the record demonstrates that the only obstacle to the relief requested is a question of law, which has now been resolved in Cozine's favor, it would be pointless to remand this case to the BOP for what essentially would be a ministerial act, while Cozine

same obstacles face Cozine if he sought to pursue an action alleging that federal officials improperly delayed their response to California's *In re Stoliker* request. Cozine also would have to overcome various immunity defenses that could bar his claim against both state and federal officials.

14. Cozine should not be denied relief now because he failed to seek judicial relief at the time. Mandamus would not have been available as a remedy for Cozine, given the absence of clearly established law on this topic. Furthermore, his petition likely would have been dismissed as premature. Until the state sentence expired and he was taken into federal custody, Cozine had not

yet suffered any injury. In theory, the injury might never occur since federal officials could later decide to grant him *nunc pro tunc* credit for the time served in state prison. In addition, Cozine would first have been obliged to exhaust all his administrative remedies, which takes time. Judging from the record before this court, federal officials did not formally deny the request for a transfer until June 3, 1996. Cozine was taken into federal custody in November 1996. By the time Cozine had exhausted all his administrative remedies and obtained a hearing on his petition, he would already have been in federal custody, and would be in the exact same position as he is in today.

continues to languish in prison. *See Downey,* 100 F.3d at 671 (declining to remand, and affirming grant of *habeas corpus,* under similar circumstances).

In summary, respondent erred in its handling of this matter. Cozine is entitled to have the state prison designated, *nunc pro tunc,* as the place for service of his federal sentence.

### III. *Commencement of Federal Sentence*

The preceding discussion concerned Cozine's concurrent sentence and the BOP's refusal to accept California's tender or to designate the state prison as the place for service of his federal sentence. However, Cozine also has asserted an independent basis for why he should be granted relief, namely that his federal sentence commenced to run on June 10, 1993, and therefore expired in 1996. Analysis of this issue depends upon whether federal officials had primary jurisdiction over Cozine on June 10, 1993.

Ordinarily, the first sovereign to arrest an offender has priority of jurisdiction for purposes of trial, sentencing, and incarceration until that priority is relinquished by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence. *See United States v. Smith,* 812 F.Supp. 368, 371 n. 2 (E.D.N.Y.1993); *Chambers v. Holland,* 920 F.Supp. 618, 622 (M.D.Pa.1996) (same). California initially had primary jurisdiction over Cozine by virtue of arresting Cozine on April 9, 1992, but relinquished that right when it released Cozine on bond the following day. *Id.*

Alabama then assumed primary jurisdiction over Cozine when it arrested him on December 4, 1992. *Id. See also Stewart v. United States,* 267 F.2d 378 (10th Cir.1959) (when sovereign releases defendant on probation, it relinquishes sole custody of him and other sovereigns may now arrest, prosecute, and incarcerate him without the consent of the first sovereign). In March 1993, Cozine was indicted by a federal grand jury in Alabama for the same conduct involved in the Alabama state charges.

On April 13, 1993, Cozine was taken into federal custody pursuant to a writ of *habeas corpus ad prosequendum.* On May 14, 1993, the Alabama charges were "no billed," and the state charges were then dismissed. On June 10, 1993, Cozine was sentenced to 37 months in federal prison. However, Cozine was not taken to a federal prison to begin serving his sentence, as the federal judge had ordered. Instead, on July 14, 1993— more than a month after the federal court committed him to the custody of the BOP— Cozine was extradited to California to face state charges. When California later attempted to return Cozine to federal authorities, the BOP refused to accept him.

Respondent contends the federal government merely "borrowed" Cozine from Alabama authorities, who had primary jurisdiction over him. Three weeks after imposition of the federal sentence, federal authorities purported to return Cozine to Alabama authorities (though it is unclear if this involved a physical or merely a paper transfer of custody). Alabama then sent Cozine to California, pursuant to a request for extradition. Thus, in respondent's version of events, federal authorities never had primary jurisdiction over Cozine, and his federal sentence did not begin to run until California paroled Cozine on November 25, 1996.

Respondent's argument may be theoretically correct but is factually incorrect. If Cozine were merely "on loan" to federal officials from Alabama pursuant to a writ of *habeas corpus ad prosequendum,* then Alabama would have had primary custody and the federal government could have returned him to the state officials from whom he had been "borrowed" without triggering the running of the federal sentence. *See, e.g., Thomas v. Brewer,* 923 F.2d at 1366–67; *Crawford v. Jackson,* 589 F.2d 693, 695–96 (D.D.C.1978); *Smith,* 812 F.Supp. at 370. Initially, Alabama did have primary custody, but the Alabama charges were "no-billed" on May 14, 1993, and dismissed. Federal authorities were clearly aware of this development, which was prominently discussed in Cozine's pre-sentence investigation report in the federal case. Answer, Ex. A, p. 16, ¶ 36, and p. 17, ¶ 39. In addition, the federal court

expressly directed that Cozine receive credit against his federal sentence for all time in custody since December 4, 1992, even though during most of that time he was in Alabama custody facing Alabama charges. That is *prima facie* evidence that the federal court knew the Alabama charges had been dismissed and would not be resurrected.

Once the Alabama charges were dismissed, Alabama relinquished any claim that it had to Cozine. *See Stewart,* 267 F.2d 378; *Smith,* 812 F.Supp. at 371 n. 2; *Chambers,* 920 F.Supp. at 622. At that point, federal authorities no longer had any need to "borrow" Cozine from Alabama, especially after the federal court imposed sentence and ordered his incarceration. Rather, Cozine was then in the primary custody of federal officials, who had both physical custody of his person and a valid judgment committing him to prison.

The situation here is analogous to *Roche v. Sizer,* 675 F.2d 507 (2d Cir.1982). Roche was first arrested on federal charges. For administrative convenience, federal officials boarded him at a state correctional institution in Connecticut while awaiting trial, but that did not alter the fact that the United States retained primary jurisdiction over him. Roche was then indicted by Connecticut. He eventually posted bond, but only on the federal charges. Although Roche had originally arrived at the state facility as a boarder, primary jurisdiction now passed to Connecticut, the United States having relinquished its claim when it allowed Roche to post bond. Thereafter, federal officials needed a writ of *habeas corpus ad prosequendum* to procure Roche for trial, and Connecticut retained primary jurisdiction.

In the instant case, the state and federal roles are reversed, but the principles are the same. Although federal officials initially obtained possession of Cozine by borrowing him from Alabama, they inherited primary jurisdiction when Alabama relinquished its claim to Cozine by no-billing and subsequently dismissing all state charges against him. No other jurisdiction had a superior claim to Cozine between May 14 and July 14, 1993. California had arrested him first, but relinquished its primary jurisdiction by releasing

him on bond in April 1992, and had not regained either physical custody of Cozine or primary jurisdiction. Thus, California could not have "loaned" Cozine to federal officials in May or June of 1993. Nor was there any legal basis for returning Cozine to Alabama, since that state no longer had any claim to him. Finally, as in *Roche,* federal primary jurisdiction was not altered by the decision to board Cozine in a county jail for administrative convenience while he was in federal custody.

The bottom line is that federal officials assumed primary custody of Cozine on May 14, 1993, when Alabama relinquished its claim to him, and they still had primary jurisdiction over Cozine on June 10, 1993, when the federal sentence was imposed. Consequently, service of the federal sentence should have commenced to run as soon as the *mittimus* issued, since Cozine was then in the primary custody of federal officials awaiting transport to the place where he was to serve his federal sentence. *See Smith v. Swope,* 91 F.2d 260; *Croft,* 450 F.2d 1094; *Kiendra,* 763 F.2d 69; *Millard,* 631 A.2d 1217. That result does not change merely because federal officials erroneously delivered Cozine to Alabama officials, who no longer had any claim to Cozine, and then stood idly by while he was sent to California. *Id.*

Of course, even though the United States had assumed primary jurisdiction, that did not preclude California from trying Cozine on the state charges before he had completed service of his federal sentence. A term of incarceration in one jurisdiction is not a shield against prosecution for crimes committed in other jurisdictions. *Ponzi,* 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607. Thus, even while Cozine was serving his federal sentence, California could still "borrow" him for purposes of trying and sentencing him, but service of the state sentence would not commence until Cozine had completed service of his prior federal sentence, unless—as in this instance—the state expressly made its sentence concurrent with the pre-existing federal sentence.

Although federal officials effectively "loaned" Cozine to California for prosecution

and sentencing, their subsequent failure to retrieve him does not alter the fact that the federal sentence had commenced to run, and would continue to do so, while Cozine was on loan to California for purposes of trial and sentencing on the state charges. This is the same principle that was applied in *Crawford*, 589 F.2d 693, which held that when a prisoner is loaned to another sovereign pursuant to a writ of *habeas corpus ad prosequendum*, the sender's jurisdiction continues uninterrupted notwithstanding the borrower's failure to promptly return the prisoner due to an administrative error.[15]

Respondent's reliance upon *Thomas v. Brewer*, 923 F.2d 1361, is misplaced. That case also begins with the petitioner being arrested by California, but any similarity ends there. Whereas Cozine was promptly released on bail, California did not release Thomas and therefore maintained primary jurisdiction over him. Although California did loan Thomas to federal authorities, pursuant to a writ of *habeas corpus ad prosequendum*, to face federal bank robbery charges, that loan did not interrupt the state's jurisdiction over Thomas or cause the federal sentence to commence running. In the instant case, by contrast, California did not have primary jurisdiction over Cozine during the period when he taken into federal custody to face the federal charges. California had relinquished that jurisdiction when it released Cozine on bond in April 1992, and did not regain that jurisdiction (if it ever did) until at least July 14, 1993, more than a month after Cozine was sentenced on the federal charges. By no stretch of the imagination could federal authorities be said to have "borrowed" Cozine from California, since that state lacked primary jurisdiction over him at the time and thus had nothing to "loan."

Even assuming that the two sovereigns could agree between themselves to transfer

primary jurisdiction to California, there is no evidence that such an agreement was ever made by the Attorney General or by other federal officials authorized to enter into an agreement of this sort. Both the transfers to Alabama and California in 1993, and the subsequent failure to promptly return Cozine to federal custody (and later, to designate the state prison as the site for service of both sentences), appear to have been solely the result of bureaucratic misadventures rather than the product of any grand executive design.

## IV. *Distinguishing Other Cases*

The court has carefully reviewed the cases cited by respondent, along with many other cases on the same topic from this and other circuits. At first glance, some of those cases may appear to support respondent's position but, upon closer inspection, do not.

Most of these cases are distinguishable on their facts alone. Often, the sentences were not expressly made concurrent. *Cf. Thomas v. Whalen*, 962 F.2d at 362 (neither court ordered its sentence to run concurrently, hence the rest of the majority opinion is *dictum*); *Smith*, 812 F.Supp. at 369 (federal sentence was to run consecutive to pre-existing state sentence); *Hawley*, 898 F.2d 1513 (11th Cir.1990) (federal sentence expressly ordered to run consecutively to preexisting state sentence); *Youngworth v. U.S. Parole Commission*, 728 F.Supp. 384 (W.D.N.C. 1990) (petitioner failed to demonstrate sentences were intended to be concurrent).

In other instances, the second sentence was for an escape or a parole violator term, both of which traditionally have run consecutively to other sentences, and—because they postdated the state sentence—were properly ordered to run consecutively to a pre-existing state sentence. *See, e.g., Meagher v. Clark*,

---

15. Other complications might arise if Cozine's federal sentence did not begin to run on June 10, 1993. For instance, if Cozine ultimately had been acquitted on the California charges, the time he spent in California custody awaiting trial on those charges would have been "dead time." Cozine would not have been entitled to credit against his federal sentence, since it had not yet begun to run. He also would not have been

entitled to credit for time served pursuant to § 3585(b), since the California charges were unrelated to the federal charges, and the California arrest in April 1992 preceded "the commission of the offense for which the [federal] sentence was imposed." § 3585(b)(2). This possibility counsels against lightly assuming that the federal sentence had not commenced to run.

943 F.2d 1277, 1279 (11th Cir.1991) (state court improperly ordered that its sentence run concurrently with any parole violator term that might be imposed in the future by the Parole Commission; the latter then expressly ordered that its parole violator term run consecutively to the previously imposed state sentence).

In some cases, the state court improperly ordered its sentence to run concurrently with a future sentence that had not yet been imposed. *See id.; Pinaud v. James,* 851 F.2d 27 (2d Cir.1988); *Sackinger,* 704 F.2d 29 (state court ordered sentence to run concurrently with future federal sentence not yet imposed, "if possible," but federal court then ordered its sentence to run consecutively to the undischarged state court term). *In re Liberatore,* 574 F.2d 78 (2d Cir.1978), concerned the power of a federal court to interrupt the service of a state sentence and order the defendant to immediately commence service of a subsequent federal sentence.

A second distinction is that, in almost all of the cases reviewed by the court, the sentence at issue was imposed prior to the effective date of 18 USC § 3584, which explicitly gave federal judges, instead of the BOP, the power to decide whether a sentence would run concurrently or consecutively. Before enactment of that rule, most courts had held that the sentencing judge could do no more than issue a recommendation, which the BOP was free to disregard. *See, e.g., Myers,* 451 F.2d at 404; *United States v. Huss,* 520 F.2d 598, 602 (2d Cir.1975); *Gomori v. Arnold,* 533 F.2d 871, 875 (3d Cir.1976). Consequently, whether a federal sentence was concurrent or consecutive could not be determined simply by reading the judgment of conviction, and the BOP's discretionary decision to treat a federal sentence as consecutive could not be questioned. That is no longer true.

Third, in very few cases was the inmate formally tendered to federal officials, who refused to accept him into federal custody. Rather, the inmate usually waited until he was released from state custody before raising the issue for the first time and seeking retroactive credit. *See, e.g., Spigner,* 452 F.2d at 1208–09. That presents an entirely different issue.

Fourth, in a number of cases the inmate, while serving a sentence imposed by one sovereign, was made available to another sovereign via a writ of *habeas corpus ad prosequendum.* Those decisions merely restate the rule that in such cases the inmate remains in the primary jurisdiction of the lending sovereign, whose sentence continues to run. The sentence imposed by the borrowing sovereign ordinarily does not commence to run, unless otherwise ordered. *See, e.g., Crawford,* 589 F.2d 693; *Smith,* 812 F.Supp. 368; *Chambers,* 920 F.Supp. at 622.

Fifth, the present case is distinguishable because the United States had primary jurisdiction over Cozine at the time sentence was imposed, with no other pending convictions or sentences to serve.

Finally, the vast majority of cases that the court reviewed were litigated *pro se,* and the analytical process appears to have been handicapped by inadequate briefing on behalf of the inmate. The precedential effect of these decisions is limited to the particular arguments that were asserted by the *pro se* inmate and addressed by the court, which does not foreclose consideration by this court of other arguments.

Several cases from this circuit warrant a more detailed discussion. In a case presenting somewhat similar facts, the Ninth Circuit initially ruled in favor of the petitioner, concluding that "it would be unfair to Shabazz and serve no federal purpose to hold that the error of state authorities prevented the intent of the state sentence from being carried out" and thus "the time Shabazz spent in state prison should be credited against his federal sentence." *Shabazz v. Carroll,* 814 F.2d 1321, 1323–24 (9th Cir.1987). However, the Ninth Circuit subsequently vacated that portion of the opinion on grounds "the court lacks jurisdiction to grant such relief." *Shabazz,* 833 F.2d 149 (9th Cir.1987). The cryptic order does not explain why jurisdiction was lacking.

The government's petition for rehearing *en banc* in *Shabazz* states that, unbeknownst to the Ninth Circuit, Shabazz was simultaneously litigating the identical issues in the Fifth Circuit, where he was incarcerated. He had

been denied relief by the district court in Texas, and had a parallel appeal pending before the Fifth Circuit. Petition for Rehearing, pp. 1–3. Accordingly, the Texas decision was dispositive and the Ninth Circuit's decision was "tantamount to a successive petition for habeas relief." *Id.,* pp. 7–8. The government also advised the Ninth Circuit that Shabazz failed to exhaust his administrative remedies before filing the petition. *Id.,* p. 9. In its original decision, the Ninth Circuit assumed that the government had waived that issue by not asserting it below when, in fact, the district court had summarily dismissed the petition before the government had even been served with a copy.

Although the government's petition asserted other grounds for rehearing, including that the original decision was erroneous, the first two grounds would seem to have been dispositive and would have prevented the Ninth Circuit from reaching the merits. Therefore, this court does not construe the order vacating part of the original opinion in *Shabazz* as a *per se* repudiation of its reasoning, but merely a determination that the Ninth Circuit had erred by even addressing the merits of that particular claim.

*Smith v. United States Parole Commission,* 875 F.2d 1361 (9th Cir.1988) (as amended), is distinguishable because no federal sentence yet existed when the state sentence was imposed. Instead, there was only the possibility of a future parole violator sentence. The Parole Commission elected not to execute its violator warrant until after Smith had completed service of his intervening state sentence, a practice that was approved·in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). In addition, the Parole Commission historically has reserved the right to make parole violator sentences consecutive to all other sentences, including intervening sentences.

*United States v. Warren,* 610 F.2d 680 (9th Cir.1980), also is distinguishable, both procedurally and factually. In *Warren,* the inmate proceeded by way of a Rule 35 motion rather than a § 2254 petition; the district court tried to order the transfer of a prisoner in state custody; and—most importantly—the

state sentence was not explicitly made concurrent to an existing federal sentence.

In *Isreal,* 125 F.3d 837, the petitioner committed a murder in California after escaping from a Missouri prison. Because the California judgment was silent, it was deemed (by operation of law) to run concurrently with the existing Missouri judgment. However, under Missouri law an escapee is not entitled to credit against his sentence until he is returned to the Missouri prison, and Missouri officials refused to accept Isreal until he was paroled from his California sentence. The Ninth Circuit acknowledged that Isreal had a liberty interest in being transferred to Missouri, but held that his rights under California law were not violated since the state had done all that was in its power to fulfill its obligations to Isreal, namely to offer him to Missouri authorities. California could not compel Missouri to accept him. Because the issue was not properly raised, the court declined to consider "whether Missouri's refusal. to accept [Isreal] violated his rights under Missouri law or whether any such violation would pose federal constitutional problems …" *Id.* 125 F.3d at 839 n. 1. Thus, Israel did not address the issue that is presented in the instant case.

*Del Guzzi,* 980 F.2d 1269, was a *per curiam* opinion in a case decided without benefit of oral argument. The panel denied relief, although Judge Norris labeled the results "deeply troubling" and "bizarre." *Id.* at 1271–72 (Norris, concurring). The petitioner was *pro se,* and the court limited its analysis to the two particular theories that he raised. While there is room to question whether the result might have been different had Del Guzzi been represented by capable counsel, *Del Guzzi* is distinguishable on its facts and does not bar relief to Cozine.

Del Guzzi received a five year federal sentence, but was allowed to remain at liberty until his scheduled surrender date the following month. One week before Del Guzzi was supposed to surrender to federal officials, he was arrested by state officials on separate state charges. He pled guilty, and the state court sentenced him to seven years imprisonment, to run concurrently with his pre-existing state term. The state court judge recom-

mended that Del Guzzi be transported to federal prison to serve his concurrent terms. "Although the state officials informed the federal officials of Del Guzzi's presence in state prison, the federal officials declined to accept him, apparently on the ground that they would take custody of Del Guzzi only upon completion of his state sentence." *Id.* 980 F.2d at 1270. When Del Guzzi was released following the completion of his state sentence, he was taken into custody by federal officials, who refused to grant credit against his federal sentence for any of the time that he had spent in state prison serving what was undeniably intended to be a concurrent sentence.

On appeal, Del Guzzi asserted only two theories. First, he argued that during the entire time he was incarcerated in the state prison he was "awaiting transportation" to the federal prison within the meaning of § 3568 (now § 3585). The panel rejected that contention. Unlike Cozine, Del Guzzi's federal sentence did not commence to run following his sentencing. When federal officials released Del Guzzi pending his self-surrender, they relinquished primary jurisdiction over him, which California then assumed when it placed Del Guzzi under arrest and sent him to prison. By contrast, federal officials had primary jurisdiction over Cozine when his federal sentence was imposed, and there was no valid reason why his federal sentence should not have commenced to run immediately.

Del Guzzi's alternative argument appears to have been a general assertion that "the federal courts have the authority to credit him with time spent in state prison." *Id.* 980 F.2d at 1271. The panel rejected his argument, though the cases cited by the majority (*Shabazz*, *Warren*, and *Smith*) are all distinguishable. The majority opinion also states that "we have no authority to violate the statutory mandate that federal authorities need only accept prisoners upon completion of their state sentence...." *Id.* 980 F.2d at 1271. However, the opinion does not cite any particular source for this "statutory mandate," and neither 18 USC § 3584(a) nor its predecessor, § 3568, purport even to address that issue.

The opinion in *Del Guzzi* contains no discussion of (and therefore expresses no opinion regarding) a number of issues that feature prominently in the instant case. For instance, the opinion never mentions California Penal Code § 2900, *In re Stoliker*, comity, due process, or the significance of BOPPS 5160.03 (or its predecessor, BOPPS 5160.02). *Del Guzzi* also does not discuss whether federal officials erred when they refused to accept Del Guzzi into federal custody, or whether a federal sentence commences to run when an inmate is properly tendered to federal officials, notwithstanding their wrongful refusal to accept him into federal custody. *Del Guzzi* does not discuss whether the BOP's refusal to accept him into federal custody or to designate the state prison as the place for service of the federal sentence, *nunc pro tunc*, was arbitrary and capricious or subject to judicial review. In *Del Guzzi*, there was no evidence that the BOP would have designated the state prison as the place for service of his federal sentence, *nunc pro tunc*, but for the agency's erroneous assumption that as a matter of law the sentences were to run consecutively. Finally, the federal sentence at issue, in *Del Guzzi* was subject to § 3568 (now repealed), under which the BOP had sole authority to decide whether a sentence should run concurrently or consecutively.

The preceding is not intended as a criticism of the *Del Guzzi* panel, which had to decide that case without benefit of adequate briefing and argument, but merely to point out the very limited scope of that opinion and the reasons why that decision is not controlling here.

## V. *Credit for Time Served*

Cozine also contends that respondent erred by refusing to give him credit, against his federal sentence, for the time that he was in custody after March 28, 1993, as the federal sentencing judge had ordered.

▉ The federal judgment of conviction "expressly directs that the defendant is to receive credit on his sentence for each day he has served in custody since his arrest on December 4, 1992." Judgment of Conviction

in No. CF–93–H–065–NE–001, p. 2. However-er, it is the Attorney General, rather than the sentencing court, who is responsible for initially computing the credit for time served, subject to judicial review following exhaustion of administrative remedies. *Wilson,* 503 U.S. at 335, 112 S.Ct. 1351. *See also Huss,* 7 F.3d at 1449; *United States v. Mori,* 798 F.Supp. 629, 631–32 (D.Haw.1992). Consequently, the sentencing court's directive must be construed as only a non-binding recommendation.

The Attorney General, through the BOP, has decided that Cozine is entitled to receive credit for time served only for the period from December 4, 1992, through March 28, 1993. It is undisputed that Cozine has fully exhausted his administrative remedies, and so the issue is now properly before this court.

Section 3585(b) provides that:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

At the time that the federal sentence was imposed in June 1993, Cozine had not received credit against any other sentence for the time that he had served in jail since December 4, 1992, in connection with the offense for which he was sentenced. Thus, under the plain language of the statute, Cozine was entitled to credit for time served, as the federal judge recognized. Nevertheless, respondent has denied Cozine credit for time served after March 28, 1993, because, almost a year later, a state court chose to give Cozine credit for time served after March 28, 1993, so that his concurrent state and federal sentences would run from the same starting point.

Respondent's interpretation of the statute is problematic. If the right to credit for time served does not vest at the time of sentencing, then when does it vest? For instance, if Cozine were in the middle of serving his federal sentence, and a state court decided to grant him credit for time served against a state sentence, could respondent rescind the credit that had been granted against the federal sentence? Justices Stevens and White raised this concern in their dissenting opinion in *Wilson,* 503 U.S. at 340–41, 112 S.Ct. 1351. In their view, "the subsequent action of a state court concerning the amount of punishment for any state offenses the defendant may have committed is purely a matter of state concern." *Id.* 503 U.S. at 340, 112 S.Ct. 1351. The majority opinion did not reach, or reject, that proposed rule. However, it is consistent with the language of the statute. Section 3585(b) mandates an award of credit for time spent in official detention "that *has* not been credited against another sentence." (emphasis added). It does not say, "and that never will be credited against another sentence."

Other courts have recognized that credit for time served may, in some instances, properly be credited against two sentences that are intended to run concurrently. "[A]n across-the-board prohibition [on granting credit against both the federal and state sentences] under all circumstances would lead to illogical results." *United States v. Benefield,* 942 F.2d 60, 66 (1st Cir.1991) (observing that any credit granted by the state court would be rendered meaningless if not similarly reflected in Benefield's concurrent federal sentence). *See also Kayfez v. Gasele,* 993 F.2d 1288, 1290 (7th Cir.1993) (rejecting BOP's contention that credit for time served against a concurrent state sentence automatically precludes an award of credit against the federal term, even when the difference in the length of the terms is less than the amount of the credit); *United States v. Drake,* 49 F.3d 1438, 1441 (9th Cir.1995) (time previously served in state prison under state sentence intended to run concurrently with federal sentence (under 18 USC § 924(e)(1)) could be credited against service of both sentences, since an alternative construction "would frustrate the concurrent sentencing principles mandated by other statutes"); *United States*

*v. Kiefer,* 20 F.3d 874, 877 (8th Cir.1994) (same).[16]

This court has concerns about the interpretation of § 3585(b) urged by respondent, and the decision to deny Cozine credit for time in custody after March 28, 1993. Nevertheless, the court will defer a ruling on this issue because it is moot. If Cozine's federal sentence commenced to run on June 10, 1993, then the full term expired in 1996 even without the application of credit for time served. The same is true if federal officials erred by not designating the state prison, *nunc pro tunc,* as the site for service of the federal sentence. This court already has ruled in favor of Cozine on both of those contentions. If the Ninth Circuit affirms either of those rulings, then the dispute regarding credit for time served is moot, and any ruling by this court on that issue would essentially be an advisory opinion.

Conversely, if the Ninth Circuit reverses both of those rulings, making it necessary to address the credit for time served issue, then it should decide the final issue as well, since its decision may redefine the legal landscape in ways that this court cannot presently foresee.[17] Because no factual disputes exist regarding the credit for time served issue, the question is one of law that would be reviewed *de novo* in any event.

## VI. *Date for Commencement of Term of Supervised Release*

■ Upon completion of his 37–month federal prison term, Cozine must serve a three-year term of supervised release. The parties agree that this term runs from the date that Cozine should have been released from prison, even if he is actually released at a later date. *See United States v. Blake,* 88 F.3d 824 (9th Cir.1996) (when sentence of imprisonment is subsequently reduced below length of time inmate has already served, term of supervised release commences to run on the date he should have been released).

Respondent has suggested that August 11, 1995, is the date on which the federal sentence would have ended and the term of supervised release should have begun to run (assuming the federal and California sentences ran concurrently). May 28 hearing, Ex. 2. The court does not agree. The concurrent California sentence was longer than the federal sentence. Cozine has not suggested that the federal detainer prevented him from receiving an earlier parole date from his state sentence. Consequently, even assuming that his federal sentence would have ended on August 11, 1995, Cozine nevertheless would have remained in state prison until he was paroled on November 25, 1996.

■ Cozine's term of supervised release was tolled during his period of state incarceration. *See* 18 USC § 3624(e) ("A period of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime, unless the imprisonment is for a period of less than 30 consecutive days"); *United States v. Schmidt,* 99

---

**16.** Indeed, a literal interpretation of § 3585(b) might preclude granting credit against more than one sentence, even if the sentences were imposed at the same time and ordered to run concurrently. Thus, if a defendant were sentenced to five two-year terms, each to run concurrently with the others, he would receive credit for time served against only one of the five sentences. As a result, he would be required to serve the full two years, and the "credit for time served" would be illusory. Such a rule would effectively negate the credit for time served altogether in such cases, while "frustrat[ing] the concurrent sentencing principles mandated by other statutes." *Drake,* 49 F.3d at 1441, quoting *Kiefer,* 20 F.3d at 877. That does not appear to be what Congress meant when it declined to give "double credit" for time in custody. *Wilson,* 503 U.S. at 337.

**17.** The court can envision only three scenarios in which the dispute concerning credit for time served can still affect Cozine: (1) if his federal sentence runs consecutively to his state sentence; (2) if the two sentences were intended to run concurrently, but the federal sentence did not actually commence to run until June 3, 1996, when federal officials refused to accept him into their custody; or (3) if the two sentences were intended to run concurrently, but the federal sentence did not actually begin to run until November 25, 1996, because Cozine was not physically in federal custody before then. Without knowing which of those scenarios applied, it would be difficult to analyze the credit for time served issue.

F.3d 315, 319 (9th Cir.1996). Therefore, Cozine's three-year term of supervised release commenced to run on November 25, 1996, the date on which he was released from state prison.

### VII. *Stay of Release Order*

 Respondent previously advised the court that it intends to appeal an adverse decision in this case. Therefore, respondent has until July 13, 1998, to release Cozine, which allows respondent sufficient time to request a stay from the Ninth Circuit. This court does not believe a further stay is appropriate, given the length of time that Cozine already has been wrongly incarcerated and the weakness of respondent's legal position. In addition, Cozine will be on federal supervised release until November 1999, and also on parole from California, which should ensure that he is adequately supervised while the appeal is pending. For purposes of FRAP 8(a), respondent has exhausted its remedies in the district court and may proceed directly to the Ninth Circuit.

### CONCLUSION

Respondent shall release Cozine from custody no later than July 13, 1998, unless the Ninth Circuit grants a stay. Upon his release, Cozine must finish serving a three-year term of supervised release which commenced to run on November 25, 1996.